CITY OF AKRON *v.* SHARPE.

(No. 86 CRB 00074—Decided
January 31, 1986.)

Akron Municipal Court.

*Jovette Pino,* assistant city prosecutor, for plaintiff.
*Joseph S. Kodish,* for defendant.

SCHNEIDERMAN, J. Plaintiff filed a motion to suppress the weapon seized on January 4, 1986, and any testimony relative to that instrument. The motion included a memorandum on the facts and the law, and an evidentiary hearing was held on January 13, 1986. The parties declined the opportunity to present additional statements of the law.

For purposes of this motion the court finds the pertinent facts as follows:

During the early morning hours of January 4, 1986, Akron police officers Urdiales and Smith were on duty in a police cruiser when they observed an automobile failing to stop at five separate stop signs in the city of Akron, Ohio. The driver was signaled to stop, and the cruiser pulled it over at the intersection of Fifth and Inman in Akron. The officers left their cruiser and approached the auto, Officer Smith to the driver's side and Officer Urdiales to the passenger's side. When they approached the vehicle, they shined their flashlights throughout the inside of the vehicle, and they observed two people inside, the defendant sitting in the front passenger seat and a driver. Officer Smith spoke to the driver and obtained his operator's license while the defendant sat silently with his hands up and with his palms vertical at chest level. Both officers

went back to the cruiser; they checked the driver's license and vehicle registration on the computer and his name for warrants. They found he had a valid license and registration, and no warrants. Officer Smith prepared a citation for one stop sign violation, and they returned to the stopped vehicle with their flashlights lit. Officer Smith, with the completed citation, went to the driver's side, and Officer Urdiales to the passenger's side. Officer Urdiales saw the defendant holding his driver's license in his right hand as if to hand it to him, but the window and door were closed. Officer Urdiales tapped the window and told the defendant, "Okay, let me see your driver's license." The defendant opened the front passenger door and handed the license over to the officer, and the officer then noticed a few-inch-long object protruding from under the right side of the passenger seat. The object appeared to be a small, narrow, black-taped handle topped with a silver-colored ornament, the top pointed towards the passenger door, and within reach of the defendant's right hand. Officer Urdiales reached down and pulled the handle, displaying a knife with approximately a four-inch haft and over a five-inch blade. The driver and the defendant denied ownership of the knife. The defendant was arrested and charged with carrying a concealed weapon under Akron City Ordinance 672.02.

The defendant claims that the knife and all the testimony relating to it should be suppressed because the defendant did not consent to the search, the search was not incidental to a lawful arrest, and that there was no probable cause for the search, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution. He cites *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383], as support.

The precise issue is as follows: After the reason for a traffic stop is completed, is a police officer permitted to examine a passenger's operator's license when he is not suspected of criminal activity?

The initial stop was lawful as the officers had probable cause to believe a traffic violation occurred and they had the right to stop the automobile. See *Delaware* v. *Prouse* (1979), 440 U.S. 648; *Pennsylvania* v. *Mimms* (1977), 434 U.S. 106. After the automobile was stopped, the officers had the right to check the driver's operator's license and registration, and to issue the citation. However, an investigative stop must be temporary and last no longer than is necessary to effectuate the purposes of the stop. See *Florida* v. *Royer* (1983), 460 U.S. 491. The officers completed their investigation and summoned the driver for the traffic minor misdemeanor of violating a stop sign. The summons was required by R.C. 2935.26 since none of the listed exceptions applies. The driver was free to leave and continue the operation of the vehicle after signing the citation. The question then is whether Officer Urdiales had the continuing justification to detain the defendant and request his driver's license after the reason for the stop was completed. The answer lies with the so-called *"Terry* stop" rule.

Searches conducted outside the judicial process are unreasonable, subject to a few specifically established exceptions. *Katz* v. *United States* (1967), 389 U.S. 347. *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383], delineated an exception to that prohibition against warrantless searches and seizures. *Terry* permits a police officer in appropriate circumstances to approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. It upheld the constitutionality of the stop-and-frisk practice and judicially authorized a brief detention of a suspect while a police officer investigates the

suspicious behavior which gave rise to the stop. The test in *Terry* v. *Ohio, supra,* is that when determining whether an investigative stop is reasonable under the Fourth Amendment, a court must determine whether the officer had specific and articulable facts giving rise to a reasonable suspicion on his part that the suspects were involved in criminal activity, past, present or imminent. *United States* v. *Hensley* (1985), 469 U.S. ____, 83 L. Ed. 2d 604.

It should be remembered as Justice White stated in *Delaware* v. *Prouse, supra,* at 662, "An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation * * *. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. * * *" In *Berkemer* v. *McCarty* (1984), 468 U.S. ____, 82 L. Ed. 2d 317, while discussing the usual traffic stop, the court found that it was more analogous to the *"Terry* stop" than to a formal arrest and summarized the rule at 334 as follows:

"* * * Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 881, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' *Ibid.* (quoting *Terry* v. *Ohio, supra,* at 29 * * *.) Typically, this means that the of-

ficer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. * * *" (Footnotes omitted.)

In this case, before the knife haft was observed, other than the traffic violation, no evidence was offered suggesting that either officer had any reasonable suspicion of criminal activity by the defendant or the driver. The driver was checked out, and the officers were satisfied with the issuance of the summons for a single traffic citation. No reasonable suspicion can be derived from the defendant's unusual reactions. Additionally, prior to finding the knife, there was no evidence that either officer had a reasonable belief that either occupant was armed and dangerous. There were absolutely no articulable facts giving rise to reasonable suspicion of criminal activity that would justify Officer Urdiales seeking the defendant's driver's license.

A recent Ohio Supreme Court case is closely analogous to the issue presented to this court and its reasoning and decision control this judgment. In *State* v. *Chatton* (1984), 11 Ohio St. 3d 59, certiorari denied (1984), 83 L. Ed. 2d 116, the defendant was stopped when the officer observed that the vehicle did not have a front or rear license plate, but as the officer approached on foot, he saw a temporary cardboard license placard lying on the rear deck of the stopped vehicle. The officer continued to approach the driver and requested his operator's license. The license was checked on the computer, and it reported that the driver's operator's license was suspended. After his arrest, the officer found a loaded revolver under the driver's seat. The driver was indicted for carrying a concealed weapon, and he sought to suppress the evidence of the gun, but the trial court denied the motion. The court of appeals reversed, and the Ohio Supreme Court

agreed, stating that any reasonable suspicion by the officer was extinguished when he saw the temporary license placard. The "extinguishment" in *Chatton* is no different than the completion or exhaustion of the reasonable suspicion in this case.

The court of appeals decision in *State* v. *Chatton* (Mar. 3, 1983), Cuyahoga App. No. 45170, unreported, cited *United States* v. *Luckett* (C.A. 9, 1973), 484 F. 2d 89, when it considered the detention. The Ninth Circuit in *Luckett* affirmed the suppression of evidence against a jaywalker and, at 90, quoted *Terry*, stating "* * * the Fourth Amendment required that the length and scope of the detention be ' "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' "

This court appreciates the practical problems a law enforcement officer has with stop-and-frisk rules, and the law of search and seizure can be intolerably confusing. Further, officers do not have the luxury of a studied intellectual consideration. However, a court is obliged to follow legal precedent, and the search and seizure of the knife was unreasonable and in violation of the Fourth and Fourteenth Amendments. The fruits of the search and seizure must be suppressed as the United States Supreme Court remains committed to the exclusionary rule. *Hayes* v. *Florida* (1985), 470 U.S. ____, 84 L. Ed. 2d 705.

In conclusion, the viewing of the haft, the seizure of the knife and all of the evidence relating to the knife must be suppressed.

It is ordered that the motion to suppress is granted.

*Motion granted.*