The STATE of Ohio, Appellee,

v.

BEVAN, Appellant.

[Cite as *State v. Bevan* (1992), 80 Ohio App.3d 126.]

Court of Appeals of Ohio,
Lake County.

No. 91–L–002.

Decided May 18, 1992.

*Steven C. LaTourette*, Prosecuting Attorney, and *Ariana E. Tarighati*, Assistant Prosecuting Attorney, for appellee.

*R. Paul LaPlante*, Lake County Public Defender, and *Jeffrey C. Ferkol*, Assistant Public Defender, for appellant.

RANDALL L. BASINGER, Judge.

Defendant-appellant, Timothy A. Bevan, Jr., appeals his conviction of drug abuse, a violation of R.C. 2925.11, raising the following assignments of error:

"1. The trial court erred to the prejudice of the defendant-appellant in overruling his motion to suppress any and all evidence obtained by the Mentor Police Department.

"2. The trial court erred to the prejudice of the defendant-appellant in overruling his motion for a Crim.R. 29 motion for acquittal where his conviction was against the manifest weight of the evidence."

In the first assignment of error, appellant contends the trial court erred in overruling his motion to suppress evidence. Appellant asserts that there was no probable cause or specific articulable facts which would justify a stop and investigation of the vehicle in which he was a passenger.

The search and subsequent arrest of appellant resulted from a traffic stop. The testimony at the suppression hearing established that on June 23, 1989 at approximately 2:00 a.m., Officer Edward J. Zigman and Officer Gary Stroud were parked in their vehicles in the Headlands Plaza parking lot. The police officers observed a vehicle, in which appellant was a passenger, pull into the plaza, stop briefly alongside a telephone booth and drive out onto a public road. Officer Stroud initiated a traffic stop of the vehicle. Officer Zigman, who followed to provide backup assistance, testified that the stop was made because the car's headlights were not on when it exited the plaza onto the public road.

Officer Zigman backed up Officer Stroud on the traffic stop by proceeding to check the passenger side of the vehicle. Officer Zigman illuminated the interior of the vehicle with a flashlight and conducted a visual check for weapons. He observed a brown medium-sized paper bag between the ankles of appellant as the right rear passenger.

Officer Zigman testified that the bag appeared to be wet because it was darker on one side. He presumed that there were open beer cans or other alcoholic beverages in the bag and advised Officer Stroud to have everybody alight from the vehicle.

The passengers exited the vehicle with appellant allegedly carrying a pack of cigarettes and a lighter in his hands. Officer Zigman then searched the car's interior, and the paper bag, which he discovered contained nearly empty beer cans.

While searching the interior of the vehicle, Officer Zigman heard two items being dropped on the ground ahead of where appellant was standing, the items being a pack of cigarettes and a lighter. Upon inspecting the cigarette pack, he found a small piece of magazine paper wedged between the cellophane and the cigarette pack. The magazine paper contained a white powdery substance, which was later identified as cocaine. Appellant was placed under

arrest and charged with one count of drug abuse, R.C. 2925.11. The other occupants were released, and the driver was not cited or given any written warnings for headlights, open containers, or otherwise.

At a continuation of the hearing, Officer Stroud testified that he stopped the vehicle because the headlights were off.

■ In order for the detention or seizure of the vehicle to be valid or legal under the Fourth Amendment, it must be reasonable. At the very least, it must be based on "specific and articulable facts" which indicate that the seizure or detention was reasonable. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357; *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237.

■. In a suppression hearing, the state bears the burden of proof and must demonstrate that the warrantless search and seizure were reasonable under the Fourth Amendment. *Mentor v. Walker* (Dec. 30, 1988), Lake App. No. 12–243, unreported, 1988 WL 142045.

■ The trial court concluded that the initial stop was reasonable in accepting the officers' testimony that the headlights were off. Although we find the testimony of the officers on this question to be somewhat suspect, we recognize that the weight of the evidence and the credibility of the witnesses are for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Based on the officers' testimony, a reasonable person could logically conclude that the headlights were off.

We conclude that there was sufficient credible evidence to prove that the initial stop was reasonable and, therefore, the trial court must proceed to determine if the subsequent detention and search were proper.

Appellant's second contention is that the further warrantless search, detention and arrest of appellant were unjustified and violated his constitutional rights.

■ The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made. *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Chatton, supra; Akron v. Sharpe* (1986), 26 Ohio Misc.2d 1, 26 OBR 212, 498 N.E.2d 518.

■ There was no lawful articulated reason for Officer Zigman to further detain or remove the passengers and search the interior of the vehicle. He admitted that he was not in fear for his safety so as to necessitate a weapons search; he was searching for open containers based on his viewing of a brown

paper bag, the contents of which were not visible or in plain view. The fact that the officer's suspicion regarding the bag's contents turned out to be correct does not justify the warrantless search. The ongoing search, as characterized by appellant, was a fishing expedition.

Similar searches have been rejected as going beyond the period necessary to effectuate a stop. The court in *Akron, supra,* stated at 2, 26 OBR at 213, 498 N.E.2d at 519:

" * * * However, an investigative stop must be temporary and last no longer than is necessary to effectuate the purposes of the stop. See *Florida v. Royer* (1983), 460 U.S. 491 [103 S.Ct. 1319, 75 L.Ed:2d 229]. * * * "

The court in *Akron* further noted that:

" ' * * * Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni–Ponce* [*supra,* 422 U.S. 873, at 881], 45 L.Ed.2d 607 [616], 95 S.Ct. 2574 [2580] (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation." *Ibid.* (quoting *Terry v. Ohio, supra* [392 U.S.] at 29 [88 S.Ct. at 1883, 20 L.Ed.2d at 910] * * *.) * * *.' "

As in *Akron,* no reasonable suspicion can be derived from the defendant's actions in the case *sub judice* which would warrant the ongoing detention and the subsequent search and seizure of property.

A similar result was reached in *State v. Chatton, supra,* wherein it was determined that the authority for an ongoing detention ends when the purpose for the stop has been effectuated. The court stated in *Chatton,* 11 Ohio St.3d at 63, 11 OBR at 253, 463 N.E.2d at 1240, that:

" * * * [T]he driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. As a result, any evidence seized upon a subsequent search of the passenger compartment of the vehicle is inadmissible under the Fourth Amendment to the United States Constitution."

The state argues that even if the search of the vehicle's interior was improper, the exclusionary rule does not apply because the evidence was obtained from an independent source. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The state maintains that the acts of appellant in dropping the cigarette pack, denying ownership and then stepping on the pack establish that the evidence was obtained from an independent source.

■ Under the "independent source" doctrine, evidence which is connected with a violation of the Fourth Amendment may nevertheless be admissible if that evidence has a source independent of the illegality. This doctrine applies to evidence obtained for the first time during an independent lawful search, as well as to evidence that is initially discovered during an unlawful search but is later obtained independently from activities which are not tainted by the initial illegality. See *Murray v. United States* (1988), 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472.

■ The officer's search and seizure of the cigarette pack in the case *sub judice* was not obtained independently of the unlawful search but was obtained during and as the result of the unlawful search. Thus, the "independent source" doctrine does not apply. See, also, *Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464, wherein the United States Supreme Court held that a warrantless search of a grocery bag which provided probable cause for the arrest was not justified as a search incident to the arrest because a search incident to an arrest may not precede the arrest and serve as part of its justification.

No ongoing or articulable reasonable suspicion was present to warrant the search of the cigarette pack. The results of the search and seizure must therefore be suppressed, given the commitment of the United States Supreme Court to the exclusionary rule.

For reasons as stated, the first assignment of error is well taken.

■ In the second assignment of error, appellant contends that his conviction was against the manifest weight of the evidence and that, therefore, his Crim.R. 29 motion for acquittal should have been granted. Specifically, appellant argues that it was not established beyond a reasonable doubt that he possessed the cocaine. This argument is not well taken.

Officer Zigman testified that when appellant exited the vehicle, he held a pack of Kool cigarettes and a lighter in his hand. Later, appellant dropped the lighter and the cigarettes, stepping on the latter in an attempt to conceal them. This testimony, if believed, was sufficient to prove that appellant possessed or had control over the cigarettes.

It is universally accepted that the weight of the evidence and credibility of the witnesses are for the trier of fact to determine. *State v. DeHass, supra,* paragraph one of the syllabus.

"In reviewing a claim that a jury verdict was against the weight of the evidence, or that the evidence was insufficient, a reviewing court's duty is to review the record to determine whether there was sufficient evidence for the

jury to find defendant guilty beyond a reasonable doubt." *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus.

The second assignment of error is not well taken.

Based on the first assignment of error, the judgment of the trial court is reversed and this cause is remanded for a new trial.

Costs of this appeal are to be assessed against appellee.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., concurs.

CHRISTLEY, J., dissents.

RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.

CHRISTLEY, Judge, dissenting.

I respectfully dissent from the opinion and judgment of the majority.

In concluding that the trial court erred in overruling appellant's motion to suppress, the majority holds that the cigarette pack was seized "during and as a result of the unlawful search" of the vehicle's interior. While I agree that the search of the vehicle had no constitutional support, it is my opinion that the seizure of the cigarette pack, and the cocaine hidden inside the wrapper, occurred independently of the search. This opinion is based upon the conclusion that the officers had the right to have appellant and the other passengers exit the vehicle once the stop itself was determined to be valid. Accordingly, I dissent from the decision of the majority.

In defining the parameters of an investigatory stop of a motor vehicle, the United States Supreme Court has held that a police officer can justifiably ask the driver to exit the vehicle during a stop. *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331. Deciding that such a request was reasonable under the circumstances, the court emphasized that the public interest in protecting the safety of the officer outweighed the modest additional intrusion upon the driver's personal liberty. The court further stated that the request could be made even when there is no indication of an imminent threat to the officer.

Although a passenger was in the car during the traffic stop, the *Mimms* court did not address the issue of whether its holding also extended to that individual. However, in interpreting *Mimms*, courts in other jurisdictions have held that its logic is equally applicable to a passenger:

"While the *Mimms* case involved only the right to order a driver to get out of the car, the *Mimms* analysis would seem also to justify a policy of ordering passengers out. The same concern of the officers for their own safety applies, and the intrusion on the rights of the passengers occasioned by being required to get out of the car is no greater than the intrusion on the rights of the driver." *State v. Ferrise* (Minn.1978), 269 N.W.2d 888, 890.

This same logic was also followed by the highest court in the state of New York:

"We conclude, as to defendant's Federal constitutional argument, * * * that precautionary police conduct directed at a passenger in a lawfully stopped vehicle is equally authorized, within Federal constitutional guideposts, as that applied to the driver. Inasmuch as the risks in these police/civilian vehicle encounters are the same whether the occupant is a driver or a passenger, 'police may order persons out of an automobile during a stop for a traffic violation' (*Michigan v. Long*, 463 U.S. 1032, 1047–1048 [103 S.Ct. 3469, 3479–3480, 77 L.Ed.2d 1201, 1218–1219]). Brief and uniform precautionary procedures of this kind are not per se unreasonable and unconstitutional." *People v. Robinson* (1989), 74 N.Y.2d 773, 774–775, 545 N.Y.S.2d 90, 91, 543 N.E.2d 733, 733–734. See, also, *Warr v. State* (Ind.App.1991), 580 N.E.2d 265; *People v. Maxwell* (1989), 206 Cal.App.3d 1004, 254 Cal.Rptr. 124.

Although some courts have reached the opposite holding on this point, I find the foregoing authority persuasive. Even in the most seemingly innocuous situation, an officer should be allowed to have a passenger leave the vehicle, so that his action can be easily monitored during the stop. Given that the intrusion is very limited, such a procedure is not unreasonable.

In this case, it is readily apparent that the request for the passengers to exit the vehicle was not specifically done for safety reasons. Appellant and the other four passengers were not asked to exit until the second officer saw the brown bag. Nevertheless, since the officers could have properly ordered the occupants to leave the vehicle for the officers' protection, this writer concludes that once it was determined that a valid stop was made, appellant's constitutional rights were not violated as a result of having to leave the vehicle. Cf. *Mentor-on-the Lake v. Roberts* (Dec. 29, 1989), Lake App. No. 88–L–13–168, unreported, 1989 WL 157244, in which it was held that a warrantless arrest was valid even though the offense used to support it was subsequently changed.

Once appellant had left the vehicle, his actions were sufficiently suspicious to warrant a further investigation on the part of the second officer. Moreover, by dropping the cigarette pack on the ground, appellant relinquished control of it. Given these circumstances, the officer did not violate appellant's

rights by asking him to remove his foot from the pack when appellant tried to conceal what he had previously discarded.

In concluding that the discovery of the cocaine was constitutional, I would again state that I agree that the search of the vehicle's interior was improper. Such actions clearly cannot occur solely as part of a valid investigatory stop of a motor vehicle.

Pursuant to the foregoing, I conclude that the seizure of the cocaine occurred independently of the illegal search of the vehicle. Therefore, I would affirm the judgment of the trial court.