OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, the State of Ohio, appeals from a final judgment of an acting judge in the Portage County Municipal Court, Ravenna Division, granting appellee's, James C. Eskridge, motion to suppress.
The following facts are relevant to this appeal. At approximately 12:00 a.m. on January 17, 1998, Deputy Patrick Burns ("Deputy Burns") of the Portage County Sheriff's Department was on routine patrol when he was dispatched to Bronco's Steakhouse in Edinburg to investigate the theft of several chairs from the restaurant. When Deputy Burns arrived at Bronco's, the manager informed the officer that he had seen two people loading chairs into the back of a pick-up truck at the rear of the restaurant. The manager provided Deputy Burns with the license plate number and a description of the vehicle involved in the theft, to wit: a green Ford Ranger with a cap over the bed.
Deputy Burns ran the license plate number through the computer in his patrol car. The search revealed that the truck was registered to person living in Spring Lakes Trailer Park in Rootstown, Ohio. Accordingly, Deputy Burns left the restaurant and proceeded to the given address to investigate.
Enroute to the Spring Lakes area, Deputy Burns observed a truck matching the description of the suspect vehicle. Deputy Burns also noticed that the license plate on the back of the truck matched the one given by the manager, with the exception of one unknown number which was obstructed by a trailer hitch.
Based on the information concerning the suspect vehicle, and on his belief that the vehicle's license plate was the same, although partially obstructed, Deputy Burns initiated a traffic stop after following the truck for approximately one-half mile. It is undisputed that Deputy Burns never observed the vehicle speed or violate any other traffic ordinance.
After exiting his patrol car, Deputy Burns approached the driver's side of the truck. Inside, he noticed that appellee was sitting behind the steering wheel with an open twelve-pack of beer in the seat beside him. When Deputy Burns asked to see appellee's driver's license, appellee responded that he did not have a driver's license, but instead had privileges to drive back and forth to work. At that time, Deputy Burns detected an odor of alcohol on appellee's breath. In addition, Deputy Burns noticed that appellee's speech was somewhat slurred and that his eyes were glassy and watery.
As a result of appellee's observed condition, Deputy Burns asked him how much he had had to drink. Appellee told the officer that he was on his way home from work and that he had had a couple of beers out of the twelve-pack. When appellee presented the papers showing that he had work privileges, Deputy Burns asked him where he worked. After telling Deputy Burns where he worked, appellee then admitted that he had stopped at a local tavern and drank four or five beers, and that after leaving the tavern he had stopped to get the twelve-pack.
Deputy Burns took appellee's paperwork and proceeded back to his patrol car to ascertain the status of appellee's driving privileges. On the way, Deputy Burns looked inside the truck bed, but saw no chairs.
While sitting in his patrol car, Deputy Burns was now able to see that the obstructed license number was slightly different from that of the transmitted number. Moreover, a subsequent check of appellee's social security number revealed that his address was different from that of the Spring Lakes address. However, in making the check, Deputy Burns also discovered that appellee was under an F.R.A. suspension.
Deputy Burns reapproached the truck and asked appellee to exit the vehicle. The officer then proceeded to administer a standard battery of field sobriety tests, which included the heel-to-toe walk, the one-legged stand, and the finger-to-nose test. Another officer who had subsequently arrived at the scene administered the horizontal gaze nystagmus test. Appellee performed poorly on all four. As a result, appellee was placed under arrest for driving under the influence of alcohol. Appellee was transported to the Portage County Sheriff's Department where he registered .166 on the Breathalyzer test.
Appellee was subsequently charged with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1), driving with a prohibited breath alcohol level in violation of R.C.4511.19(A)(3), operating a motor vehicle without a driver's license in violation of R.C. 4507.02, and driving with an open container in violation of R.C. 4301.62. Appellee pled not guilty to all charges.
On January 28, 1998, appellee filed a motion to dismiss and/or suppress with the trial court. As grounds for the motion, appellee argued that the charges against him should be dismissed because the continued prosecution of such charges after the issuance of an administrative license suspension would constitute double jeopardy.
On the same day, appellee also filed a motion for probable cause. In this motion, appellee again requested that the trial court dismiss the charges against him and to further suppress any and all tests administered on the night of his arrest. Appellee further asked the trial court to find that Deputy Burns lacked probable cause to arrest him.
An acting judge conducted a hearing on appellee's motion to suppress on July 8, 1998. Deputy Burns was the only person to testify at the hearing. After evaluating all of the evidence, the acting judge granted appellee's motion to suppress, finding thatbefore he approached the vehicle, Deputy Burns realized that appellee's license plate did not match that of the transmitted number. Hence, any further detention was unlawful.
Appellant timely appealed from this judgment pursuant to Crim.R. 12(J) and asserts the following assignment of error for our review:
 "The trial court erred in granting defendant-appellee's motion to suppress where the officer conducting the investigatory stop of defendant-appellee's vehicle had reasonable suspicion that a crime had been committed by the driver of the vehicle."
In its sole assignment of error, appellant maintains that the detention of appellee was reasonable under the circumstances, and, therefore, was valid under the Fourth Amendment to the United States Constitution. According to appellant, it was onlyafter Deputy Burns had observed appellee's inebriated condition that he discovered appellee's truck was not the vehicle suspected in the alleged theft. By that time, however, Deputy Burns suspected him of being under the influence of alcohol. As a result, appellant argues that the officer was justified in further detaining appellee to investigate his suspicions. For the following reasons, we agree.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. See, also, State v. Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 5, 1998 Ohio App. LEXIS 6163; State v. Koziol (Aug. 29, 1997), Lake App. No. 96-L-193, unreported, at 13, 1997 Ohio App. LEXIS 3877.
When reviewing the granting or denial of a motion to suppress, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592; Carleton at 6; Koziol at 13. After accepting such factual findings as true, the reviewing court must then independently determine as a matter of law whether or not the applicable legal standard has been met.Retherford at 592; Carleton at 6; Koziol at 13.
The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Moreover, the Fourth Amendment is only applicable in those situations where an actual "search" or "seizure" has occurred. Here, there is no question that the protections of the Fourth Amendment apply because a stop of a motorist in transit constitutes a seizure for Fourth Amendment purposes. Carleton at 7. See, also, State v.Durfee (Mar. 6, 1998), Lake App. Nos. 96-L-198 and 96-L-199, unreported, at 5, 1998 Ohio App. LEXIS 865.
Despite the protections afforded by the Fourth Amendment, certain exceptions are recognized. Pursuant to Terry v. Ohio
(1968), 392 U.S. 1, the investigative stop exception to theFourth Amendment allows a police officer to stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts, that criminal behavior has occurred or is imminent. State v.Gedeon (1992), 81 Ohio App.3d 617, 618. See, also, Mentor v.Schoenfeld (Aug. 20, 1999), Lake App. No. 98-L-141, unreported, at 3, 1999 Ohio App. LEXIS 3884.
In evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as "`viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" State v. Shacklock (Apr. 30, 1999), Trumbull App. Nos. 98-T-0005 and 98-T-0083, unreported, at 4, 1999 Ohio App. LEXIS 2020, quoting State v. Andrews (1991), 57 Ohio St.3d 86, 87-88. See, also,State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; Schoenfeld at 3-4.
In the case at bar, there is no question concerning the validity of the initial stop. Deputy Burns was traveling toward an area in which he believed a possible theft suspect resided. Within two or three miles of the targeted residence, he happened upon appellee's truck, which matched the description of the suspect vehicle. While following the vehicle, Deputy Burns determined that the license plate number appeared to be the one provided by the restaurant manager. However, one number was obscured from view by the trailer hitch. At that point, however, Deputy Burns testified that he was unaware that the obscured number was different from the transmitted number. Deputy Burns subsequently initiated a traffic stop to investigate the vehicle further. As a result, we conclude, apparently as did the acting judge, that this initial stop by Deputy Burns was supported by specific and articulable facts warranting an investigative stop.
The next inquiry became whether or not Deputy Burns was justified in his continued detention of appellee. The acting judge decided this question in the negative as a result of his factual determination that Deputy Burns realized his mistake after the stop, but before he approached appellee. Citing State v. Chatton (1984),11 Ohio St.3d 59, the acting judge concluded that once Deputy Burns determined that the license plate was off by one number, he should have released appellee because the initial justification for the stop had dissipated.
Assuming an adequate evidential foundation existed to support the acting judge's factual findings, we disagree with his assessment of the legal significance of those facts.[1] The judgment entry indicates that the acting judge relied exclusively on his determination that prior to approaching the vehicle, the officer knew the license plate number was one number different. Nevertheless, that finding did not mandate the legal conclusion made by the acting judge. Even under those facts, Deputy Burns would have had reasonable suspicion to continue his investigation.
At the time he became aware of the conflicting number, Deputy Burns did not know if the incorrect digit was the result of the eye witness' observation, the transmission of the dispatch, or if the truck was actually the wrong vehicle and appellee an innocent bystander. The discrepancy of a single digit, coupled with the rather remarkable similarity of the truck and the location of the stop, created a coincidence too great to be ignored without further inquiry and investigation.
Unlike Chatton, the purpose of the original stop in the instant matter had yet to be satisfied. The defendant in Chatton was stopped after a police officer observed him operating a vehicle which appeared to have no license plates. When the officer approached the vehicle on foot, he observed a valid temporary tag taped to the rear window. However, instead of letting him go, the officer asked to see the defendant's driver's license. A subsequent radio check showed that the license was suspended. As a result, the defendant was placed under arrest for driving under suspension. A further search of the vehicle turned up a loaded gun under the driver's seat. The defendant was then indicted for carrying a concealed weapon.
In holding that once the suspicion which gave rise to the initial stop evaporated, any additional intrusion or detention had to have been supported by specific and articulable facts demonstrating the reasonableness of the continued detention, the court noted that:
 "In our view, because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to the random detentions struck down by the Supreme Court in Delaware v. Prouse [(1979), 440 U.S. 648]." Chatton at 63. See, also, State v. Bevan (1992), 80 Ohio App.3d 126, 129; State v. Cooke
(Sept. 24, 1999), Lake App. Nos. 98-L-160 and 98-L-162, unreported, at 5-7, 1999 Ohio App. LEXIS 4467.
Under Chatton, a police officer could not, without additional cause or reasonable suspicion, detain a person who has been validly stopped any longer than necessary to confirm or dispel her initial suspicions. That was not the case here.
At the suppression hearing, Deputy Burns testified that the description of the truck and the license plate number matched except for a single obscured and unknown digit, and that he noticed an odor of alcohol and other indicia of intoxication when he first approached appellee and asked for his driver's license. This approach occurred immediately after the initial stop and before Deputy Burns had ascertained appellee's identity. Contrary to the acting judge's finding, it was not until he returned to his patrol car with appellee's paperwork that Deputy Burns testified that he noticed that the license plate number was in fact different by one number from that of the transmitted number. However, even if the acting judge was correct in finding that the officer did look at the plate before he approached appellee's truck, Deputy Burns still had a reasonable belief of wrong doing sufficient to proceed with a further investigation.
This court has previously noted that upon validly stopping a vehicle, an officer may subsequently perceive facts that indicate the driver was intoxicated. Carleton at 10. Taking into consideration the odor of alcohol, the condition of appellee's eyes, his admission of alcohol consumption, and the lack of a driver's license, Deputy Burns was clearly justified in detaining appellee long enough to conduct field sobriety tests.
Moreover, the underlying facts of this case are significantly different from those in Chatton. Here, appellee was stopped both for displaying an obstructed license plate and for suspicion of theft, while the defendant in Chatton was merely stopped for a single traffic violation. Clearly, the termination of a theft investigation requires more than a single digit disparity in license plate numbers, especially in light of the striking similarities between appellee's truck and the suspect vehicle, as well as the location of the stop. It was during the course of his investigation that Deputy Burns noticed the indicia of intoxication which, in turn, gave rise to the reasonable suspicion that appellee was driving under the influence of alcohol.
Based on the foregoing analysis, the acting judge's decision to suppress evidence was contrary to law. Thus, appellant's assignment of error has merit. Accordingly, the judgment of the acting judge is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 _________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] We note that a strong case can be made that no competent, credible evidence existed to support the acting judge's factual findings.