OPINION
Defendant-appellant Dan McDowell, III appeals the August 25, 1999 Decision and Judgment Entry of the Ashland County Court of Common Pleas which denied his motion to suppress, and the December 22, 1999, Judgment Entry which found appellant guilty of one count of carrying a concealed weapon and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On April 30, 1999, the Ashland County Grand Jury indicted appellant with one count of carrying a concealed weapon, in violation of R.C.2923.12(A). At his arraignment on May 27, 1999, appellant plead not guilty to the charge. On June 23, 1999, appellant filed a Motion to Suppress. The motion alleged the arresting officer unlawfully detained appellant and arrested appellant without probable cause. Appellant maintained even if the court determined the initial detention of appellant was valid, his continued detention was unjustified. Appellant sought suppression of the gun found on his person. The following evidence was adduced at the August 9, 1999 suppression hearing. Sgt. Michael Bammann, a supervisor in the City of Mansfield's Special Investigative Unit, was the only witness to testify. Sgt. Bammann works with the METRICH Drug Enforcement Task Force, a multijurisdictional unit targeting drug offenders. On April 26, 1999, Sgt. Bammann received information that Hansey McDowell, a black male Sgt. Bammann had been investigating for suspected drug-related activity for several months, might be at a trailer on the main camp ground at Charles Mill Lake. The trailer was registered in Hansey McDowell's name. That night, a ranger at the lake called Sgt. Bammann to report possible drug activity at Hansey McDowell's trailer. T. at 6. Sgt. Bammann contacted Hansey McDowell's probation officer, Pam Grimes, who told him she was revoking Mr. McDowell's probation and intended to arrest McDowell on a probation violation. That night, Sgt. Bammann, who could recognize McDowell, and probation officer Pam Grimes went to the campgrounds at Charles Mill Lake in hopes of apprehending Hansey McDowell. Sgt. Bammann's vehicle was located near the front of the park, Detective Dean Sgambellone was in a unmarked vehicle one road away from the trailer. During the surveillance of the trailer, Det. Sgambellone radioed Sgt. Bammann and told him a 1991 Cadillac driven by a white male and containing a black male passenger was leaving the area of the trailer. Det. Sgambellone was not familiar with McDowell. After the Cadillac left the main gate of the campground, Sgt. Bammann followed the vehicle and radioed for backup assistance from marked units from Richland County. Sgt. Bammann testified he wanted to make a "car stop" because he "felt that there was a chance that either the passenger was [Hansey] McDowell or possibly he may be in the back seat of the car lying down." T. at 11. Sgt. Bammann planned to execute a bench warrant to arrest McDowell. While following the Cadillac, Sgt. Bammann was unable to get close enough to determine whether the passenger was, in fact, Hansey McDowell. However, Sgt. Bammann testified a check of the Cadillac's license plate revealed the vehicle belong to Dan McDowell, Hansey McDowell's brother. The Cadillac stopped at a convenient store in the Village of Mifflin. Sgt. Bammann also turned into the store parking lot, stopping approximately 20 feet behind the Cadillac. At that time, the black male passenger exited the vehicle. Sgt. Bammann got out of his vehicle but instantly recognized the passenger in the Cadillac was not Hansey McDowell, but rather appellant, Dan McDowell. Sgt. Bammann then approached both occupants of the Cadillac, identified himself as a police officer, and asked appellant if he could "wait a minute." Deputy Montgomery of the Richland County Sheriff's Department arrived on the scene approximately five minutes later. At that time, both occupants of the Cadillac were asked to produce identification. After the deputy conducted an identification check, the officers discovered an active warrant for Gary Ramsey, the driver of the vehicle. Sgt. Bammann testified:
 A. No, I just asked [appellant] if he could wait a minute. We'd like to talk to him. Basically just small talk.
* * *
 Q. How long from the time you identified yourself as an officer and asked them to remain still until the marked patrol car arrived?
 A. I don't think it was any more than five minutes, if that.
* * *
Q. was that something you were doing for your safety?
A. Yes.
* * *
 Q. Did you or anyone within your personal knowledge take Mr. Ramsey's identification and run it and see if there were any more?
 A. Deputy Montgomery did. He ran both Dan McDowell and Gary Ramsey.
Q. Where were you while that was being done?
 A. Kind of at the — maybe five or six feet at the left rear corner of the car. I'm kind of behind both of them.
 Q. So I get this straight, you approached the vehicle, showing your badge. You asked the individuals in the car to remain near the car and standing; within a few minutes Montgomery arrives?
A. That's correct.
* * *
 Q. How long did it take Deputy Montgomery to run those identification?
 A. We ran them as soon as he got there. They were back within a minute or two.
T. at 13, 14, 17-18.
Sgt. Bammann arrested Mr. Ramsey and proceeded to conduct a custodial search of his person. This search yielded a .38 loaded revolver in Mr. Ramsey's pants pocket. Sgt. Bammann retrieved the gun and turned it over to the Deputy Montgomery. As Sgt. Bammann handed the gun to the deputy, appellant told Sgt. Bammann "he had one too." T. at 19. Sgt. Bammann testified he had no intention of arresting appellant before he made this statement, but appellant would have been "in the process of being patted down for weapons." T. at 20. Deputy Montgomery removed the gun from appellant and placed appellant under arrest. At the conclusion of the suppression hearing, the trial court took the matter under advisement and encouraged additional briefs from counsel. In an August 25, 1999 Judgment Entry, the trial court denied appellant's motion. The trial court found the "stop" of the vehicle to be reasonable and any search of Mr. Ramsey to be incident to a lawful arrest. Further, the trial court found appellant voluntarily produced a loaded .38 caliber semiautomatic handgun and was therefore also properly arrested at that time. In a September 9, 1999 Judgment Entry, the trial court permitted appellant to withdraw his previous plea of not guilty, and accepted appellant's plea of no contest to the charge. The trial court convicted appellant of the sole charge of the indictment. After an October 21, 1999 sentencing hearing, the trial court filed its December 22, 1999 Judgment Entry sentencing appellant to two years probation, all but the first six months suspended. Appellant prosecutes this appeal from the August 25, 1999 Judgment Entry denying appellant's Motion to Supress, assigning the following error:
THE TRIAL COURT ERRED BY OVERRULING THE MOTION TO SUPPRESS.
Standard of Review
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." I In his sole assignment of error, appellant challenges the trial court's denial of his motion to suppress. Specifically, appellant maintains the officers had no reasonable basis to detain him once they ascertained he was not Hansey McDowell, and, therefore, was not the subject of a bench warrant. We agree. TheFourth Amendment to the United States Constitution provides, in pertinent part, "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated." Section 14
Article I of the Ohio Constitution also guarantees the right of the people to be free from unreasonable searches and seizures. Accordingly, the government is prohibited from subjecting individuals to unreasonable searches and seizures. Delaware v. Pruse (1979), 440 U.S. 648. The detention of an individual by a law enforcement officer does not violate the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution if there are, at the very least, "specific and articulable" facts indicating the detention was reasonable. See, State v. Chatton (1984), 11 Ohio St.3d 59, 61, and Terry v. Ohio (1968), 392 U.S. 1, 21-22. To justify an investigatory detention, a law enforcement officer must "demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity." State v. Correa (1995), 108 Ohio App.3d 362, 366. See, Terry, supra. "The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made." State v. Bevan (1992), 80 Ohio App.3d 126, 129, citing Chatton, supra. In the matter sub judice, Sgt. Bammann may have intially had a reasonable articulable suspicion to detain Hansey McDowell. However, once Sgt. Bammann determined the passenger in the Cadillac was not Hansey McDowell, he had no reasonable, articulable facts or suspicion of criminal activity to justify appellant's continued detention. Notwithstanding this situation, Sgt. Bammann told appellant he had to remain at that location until the marked patrol car arrived. Both appellant and the driver of the vehicle were required to wait while a Richland County Deputy checked appellant's identification. We find appellant was seized because Sgt. Bammann's conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." See, Michigan v. Chesternut (1988), 4 86 U.S. 567, 569. Sgt. Bammann told appellant to remain at the convenient store while Bammann waited for backup assistance. Under these circumstances, appellant would not have felt free to walk away and go about his business. Furthermore, based upon the facts as set forth above, we find this initial seizure of appellant was illegal since Sgt. Bammann lacked an articulable and reasonable suspicion appellant had engaged in criminal activity at the time he was detained and asked to produce identification. Once Sgt. Bammann realized the passenger in the vehicle was not Hansey McDowell, but rather his brother, any potential probable cause which may have existed, was no longer available to justify a continued detention of appellant. By detaining appellant after it was determined he was not Hansey McDowell, the scope and duration of the investigatory stop lasted longer than was necessary "to effectuate the purpose for which the initial stop was made." Bevan, supra at 129. The continued detention of appellant than became an illegal seizure. See, State v. Robinette (1997), 80 Ohio St.3d 234. Consequently, appellant's voluntarily statement he also had a gun stemmed from an initial violation of his fourth amendment rights. Accordingly, any evidence obtained as a direct result of this illegal detention should have been suppressed. Appellant's sole assignment of error is sustained. The August 25, 1999 Judgment Entry of the Ashland County Court of Common Pleas is reversed.
This matter is remanded to that court for further proceedings consistent with this opinion and the law.