OPINION
{¶ 1} The State of Ohio ("appellant"), pursuant to Crim.R. 12(J) and R.C. 2945.67(A), appeals from an order of the trial court suppressing evidence obtained from the detention of John Fortson ("appellee"). For the following reasons, we affirm the decision of the trial court in this matter.
 {¶ 2} The following facts were presented at the suppression hearing. On June 22, 2001, at approximately 12:30 A.M., Ashtabula City Police Officer George Cleveland observed a Jeep Cherokee driving down West Avenue in Ashtabula, Ohio, without its headlights operating. Noting that the vehicle did not have its headlights on, Officer Cleveland initiated a lawful traffic stop of the Cherokee. As it was dark outside, Officer Cleveland approached the stopped vehicle from the passenger's side in accordance with normal safety procedures. Upon reaching the passenger's side window, Officer Cleveland asked the driver, later identified as Cregg Vaughn ("Vaughn"), for identification, which Vaughn produced. Officer Cleveland then asked Vaughn to step back to his patrol car to process his traffic violation.
 {¶ 3} After completing his business with Vaughn, Officer Cleveland testified that he returned to the vehicle and began asking the passengers for identification. When appellee was asked for his identification, he stated that he did not have any on his person, but that his name was John Fortson. Officer Cleveland then asked appellee for his social security number and date of birth so that he could run a check for any outstanding warrants. Appellee gave him the requested information, but when Officer Cleveland ran the check, the information proved inaccurate. As a result, appellee was asked if he could provide some form of accurate identification. Appellee indicated that his identification was at his cousin's house just several minutes away from the location of the traffic stop. Officer Cleveland then transported appellee to his cousin's house and appellee's cousin went inside to secure the identification. Upon returning, appellee's cousin produced a valid ID.
 {¶ 4} Officer Cleveland's subsequent check of appellee's ID indicated that appellee had no outstanding warrants or charges. At that point, Officer Cleveland decided that appellee was free to leave. Officer Cleveland opened the back door of his cruiser to let appellee go free; however, in the process of exiting the police cruiser, appellee dropped a bag on the ground containing a substance later determined to be cocaine. Appellee was subsequently arrested and charged with possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree.
 {¶ 5} Appellee was indicted by the Ashtabula County Grand Jury on August 29, 2001. After entering a plea of not guilty, appellee then filed a motion to suppress with the trial court on December 10, 2001, claiming that the evidence seized was the result of an improperly extended traffic stop. Following the March 14, 2002 suppression hearing, the trial court granted appellee's motion to suppress on March 29, 2002. In its decision, the trial court found that the arresting officer had improperly extended the scope and duration of his initial stop. This timely appeal followed. Appellant asserts the following assignment of error for our review:
 {¶ 6} "[1.] The trial court erred when it granted appellee's motion to suppress evidence."
 {¶ 7} At a hearing on a motion to suppress, a trial court, functioning as the trier of fact, is in the best position to evaluate the evidence, judge the credibility of the witnesses, and resolve the factual issues. State v. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's ruling on a motion to suppress, an appellate court is bound to accept the trial court's factual determinations if they are supported by competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. Once an appellate court accepts the trial court's factual determinations as true, the appellate court must conduct a de novo review of the trial court's application of the law to those facts. Id.
 {¶ 8} It is important to note that appellant does not directly challenge the trial court's findings of fact "with regards to the sequence of events." Instead, appellant asserts that in making its decision, the trial court failed to consider the "sequence of events in light of the totality of the circumstances" and "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1996), 57 Ohio St.3d 86,87-88. Specifically, appellant argues that the issue of officer safety properly allowed the officer in this case to extend the scope and duration of his initial traffic stop. We disagree with appellant.
 {¶ 9} It has long been held that any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance. State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, 2002 Ohio App. LEXIS 6661; State v. Cosari (Mar. 30, 2001), 11th Dist. No. 99-P-0120, 2001 Ohio App. LEXIS 1562. However, it has also been held that the scope and duration of a traffic stop may not be extended beyond what is necessary to accomplish the original purpose of the stop. State v.Ford, 11th Dist. No. 2000-L-130, 2001-Ohio-8794, 2001 Ohio App. LEXIS 5860. "Absent any additional articulable facts arising after the stop is made, the police officer must tailor his detention of the driver to the original purpose of the stop." State v. Robinette (1997),80 Ohio St.3d 234, 240. Further, absent reasonable suspicion of criminal activity on behalf of the passenger, the scope and duration of a stop is unconstitutionally expanded when identification of a passenger is requested following the completion of events surrounding the initial stop. State v. Taylor (2000), 138 Ohio App.3d 139; Ford, supra.
 {¶ 10} The record indicates that Officer Cleveland testified several times that it wasn't until he was finished with the driver of the vehicle that he returned to the vehicle and began asking the passengers for identification. Officer Cleveland repeatedly testified that he did not see any guns or weapons in or around the vehicle, no threats were made to him, and that he did not suspect that the vehicle was stolen. Officer Cleveland also noted that the driver of the vehicle was "cooperative and compliant for the entirety", and that prior to asking appellee for his identification, he did not observe any behavior that would indicate appellee was involved in any type of criminal activity.
 {¶ 11} While officer safety is of great concern to this court, the record indicates that Officer Cleveland did not even call for backup when he initiated the traffic stop of Vaughn's vehicle. There was no evidence to suggest that the individuals involved presented any type of threat to Officer Cleveland. While the record indicates that two other police cruisers did arrive at the scene, Officer Cleveland testified that they did not participate in the initial traffic stop. Indeed, the record indicates that the other officers did not become involved with the traffic stop until Officer Cleveland unilaterally decided to take appellee to his cousin's house to find his ID.
 {¶ 12} Although the results of an officer's search and seizure prove the officer's hunch to have been correct, upon review of the totality of the circumstances, the court must focus independently upon the reasonableness of the officer's investigatory stop. Terry v. Ohio
(1968), 392 U.S. 1; State v. Freeman (1980), 64 Ohio St.2d 291. "Reasonable suspicion that a detainee is engaged in criminal activity must exist as long as the detention does. The lawfulness of the initial stop will not support a `fishing expedition' for evidence of a crime."State v. Bevan (1992), 80 Ohio App.3d 126, 130, citing State v.Smotherman (July 29, 1994), 6th Dist. No. 93WD082, 1994 Ohio App. LEXIS 3302, at *3.
 {¶ 13} The record indicates that Officer Cleveland had no articulable, reasonable suspicion with which to extend the stop and investigate the passengers of Vaughn's vehicle. Once Officer Cleveland had finished with Vaughn, Vaughn and his passengers should have been free to go. Therefore, based on the totality of the circumstances and the evidence before us, we cannot say that the trial court erred in granting appellee's motion to suppress. Appellant's sole assignment of error is overruled.
WILLIAM M. O'NEILL, DIANE V. GRENDELL and CYNTHIA WESTCOTT RICE, JJ., concur.