OPINION
{¶ 1} Michael Breisch appeals from his conviction and sentence following a no-contest plea to one count of cocaine possession.
 {¶ 2} In his sole assignment of error, Breisch contends the trial court erred in overruling his pre-trial suppression motion.
 {¶ 3} The present appeal stems from a traffic stop in which Dayton police discovered a crack pipe in Breisch's possession and a small piece of crack cocaine near his seat. Following his indictment for fifth-degree felony possession of crack cocaine, Breisch filed a motion to suppress all evidence against him. Therein, he alleged that the "stop and seizure [were] in violation of Defendant's right to be secure from unreasonable searches and seizures" and his Fifth Amendment right not to incriminate himself. In particular, Breisch alleged that the traffic stop was unlawful, that the search of his person "exceeded the permissible bounds of a `stop and pat' frisk pursuant to Terry[,] and that any statements he made were elicited in violation of his right against self-incrimination.
 {¶ 4} The matter proceeded to a hearing on Breisch's motion. Suppression hearing testimony reveals that Dayton police officers Patrick Bucci and Patrick Bell initiated a traffic stop on eastbound State Route 35 after allegedly observing a car change lanes without signaling. Breisch sat in the front passenger's seat of the stopped car, and his brother, Steven, was the driver. After stopping the vehicle, Bucci approached the passenger's side and watched while Bell spoke to the driver.
 {¶ 5} Bucci testified that he then saw Breisch grab the waistband of his pants and stuff something inside. Bucci explained that the object was small enough to fit inside the palm of Breisch's hand. Believing that the unidentified object might be a gun, a knife, or possibly contraband, Bucci ordered Breisch out of the car and asked what he had put down his pants. Breisch responded, "You'll find out." Bucci then asked whether the object was a gun. Breisch informed him that it was "nothing that will hurt you."
 {¶ 6} On direct examination, Bucci testified about what happened next:
 {¶ 7} Q. "And did you take his word on it at that time or did you have to pat him down further?"
 {¶ 8} "Pat him down further."
 {¶ 9} Q. "And why did you do that, please?"
 {¶ 10} "I've never met Michael Breisch and I can't take his word for such a drastic movement and hand gesture on a traffic stop that it's not a gun."
 {¶ 11} Q. "And what happened after you took additional precautions, please?"
 {¶ 12} "We recovered [sic — discovered] moments later that it was a crack pipe."
 {¶ 13} Q. "And that was found where Mr. Breisch had made the movement prior?"
 {¶ 14} "That's correct."
 {¶ 15} Bucci testified that Breisch was handcuffed and placed in a police car after the crack pipe was discovered. Bucci then searched the area of the car where Breisch had been sitting and discovered a piece of crack cocaine.
 {¶ 16} On cross examination, Bucci further described what occurred after he ordered Breisch out of the stopped vehicle.
 {¶ 17} Q. "And that's when you asked him what he had stuffed down his pants. And his response was that you would find out?"
 {¶ 18} "That's right."
 {¶ 19} Q. "And then you questioned him further whether or not it was a weapon?"
 {¶ 20} "That's correct."
 {¶ 21} Q. "And he indicated to you that it was nothing that could harm you?"
 {¶ 22} "Right."
 {¶ 23} Q. "And at that point in time, did you reach your hands down his pants and pull out the object?"
 {¶ 24} "I pulled back his waistband and it was sitting there just in his waist and I removed it, yes."
 {¶ 25} Q. "I'm sorry."
 {¶ 26} "Yes, I moved it, yes."
 {¶ 27} Q. "You removed it, okay, you removed. And did Officer Bell remove anything from his pants or was it just you?"
 {¶ 28} "I just removed the contraband."
 {¶ 29} Q. "And that turned out to be a pipe?"
 {¶ 30} "A crack pipe, correct."
 {¶ 31} Q. "And at that point in time, you placed him under arrest?"
 {¶ 32} "That's correct."
 {¶ 33} For his part, officer Bell confirmed that he and Bucci had stopped the vehicle for failing to signal a lane change. Bell also testified about waiting in the police cruiser with Breisch after his arrest while Bucci searched the stopped car. According to Bell, Bucci returned to the police cruiser with a piece of cocaine. Breisch then spontaneously stated that the cocaine was "not from this time." Breisch added that the cocaine must have been left in the car sometime earlier. When one of the officers suggested that Breisch and his brother might both be arrested, Breisch stated that his brother "doesn't do that kind of stuff."
 {¶ 34} The next witness was Breisch himself. He denied placing anything down his pants while Bucci watched. He stated that he merely had pressed on his "crotch" to confirm that the crack pipe remained where he previously had placed it. Breisch testified that after his removal from the car he was "searched," arrested, and placed in the police cruiser. He added that Bell subsequently asked him a number of questions about the cocaine Bucci found in the stopped car.
 {¶ 35} With regard to the discovery of the crack pipe inside his pants, Breisch testified as follows on cross examination:
 {¶ 36} Q. "And after this officer asked you, do you remember him patting you down for weapons or patting you down for contraband?"
 {¶ 37} "Yes, he actually put a glove on and unbuckled my pants and pulled them out and asked me if this was humiliating, humiliating enough. And then he told his partner that isn't this humiliating or wouldn't this be humiliating."
 {¶ 38} Q. "And so were you handcuffed prior to that or did he handcuff you after he patted you down?"
 {¶ 39} "Right then after that and then they searched some more after they handcuffed me."
 {¶ 40} Breisch's brother, Steven, was the final witness. His only testimony of significance was that he had used his turn signal prior to changing lanes on State Route 35.
 {¶ 41} After reviewing post-hearing briefing, the trial court filed a decision overruling Breisch's motion. In support of its ruling, the trial court found as follows:
 {¶ 42} "After weighing the testimony, including the credibility of the witnesses, the court finds that there existed reasonable, articulable facts and circumstances giving the officers reasonable cause to stop the vehicle driven by Steven Breisch in which the defendant was a passenger. The court further finds that based upon the totality of the circumstances, including that the defendant either placed the crack cocaine pipe into his pants or felt in his crotch area to confirm that it was located where he had earlier placed it, there existed probable cause for Officer Bucci to do a pat-down search of the defendant during which he discovered the crack cocaine pipe.
 {¶ 43} "The court further finds that there existed probable cause for Officer Bucci to search the area surrounding where the defendant was sitting, during which search the officer found the small piece of white substance which the State maintains is crack cocaine.
 {¶ 44} "The court further finds that the evidence establishes that the statements made by the defendant to the officers were not made in response to any questioning; that the defendant's excited utterances in response to his observations of the officers' conduct in the pat-down search and the later search of the vehicle resulting in the discovery of the alleged crack cocaine were not caused by any acts of the officers in contravention of the defendant's constitutional rights * * *."
 {¶ 45} On appeal, Breisch raises several arguments. First, he contends the traffic stop was unconstitutional because no violation of the law had occurred. Second, he claims Bucci lacked a reasonable justification for patting him down or doing a full search. Third, he asserts that Bucci did not do a limited pat-down for weapons. Instead, the officer conducted a search in violation of Minnesota v. Dickerson (1993), 508 U.S. 366. Fourth, he argues that he was subject to custodial interrogation in violation of Miranda. Finally, he contends all of the evidence against him (i.e., the crack pipe, the piece of crack cocaine, and his statements in the police cruiser) must be suppressed as fruit of the poisonous tree.
 {¶ 46} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994),93 Ohio App.3d 586. We must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, we then independently must determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 47} With the foregoing requirements in mind, we reject Breisch's argument that the traffic stop in this case was unconstitutional. The trial court credited Bucci's and Bell's testimony that they made the stop because they had observed a traffic violation. This violation unquestionably justified the traffic stop. See Whren v. United States (1996), 517 U.S. 806;Dayton v. Erickson (1996), 76 Ohio St.3d 3.
 {¶ 48} We also find no merit in Breisch's argument that Bucci lacked a reasonable basis for conducting a pat-down. The trial court found that Bucci had seen Breisch either reach inside his pants or feel the crotch of his pants. In our view, either of these actions was sufficient, under the totality of the circumstances, to justify a weapons pat-down pursuant to Terry
v. Ohio (1968), 392 U.S. 1. Bucci was not required to accept Breisch's claim that he did not possess anything that would hurt the officer.
 {¶ 49} We are persuaded, however, by the argument that Bucci unlawfully exceeded the scope of a limited weapons pat-down when he reached inside Breisch's pants and retrieved the crack pipe. We recently addressed a similar argument in State v. Justus,
Montgomery App. No. 20906, 2005-Ohio-6540. There we discussed the permissible scope of a Terry pat-down for weapons as follows:
 {¶ 50} "In Terry v. Ohio (1968), 392 U.S. 1,20 L.Ed.2d 889, 88 S.Ct. 1868, the Supreme Court affirmed the investigative detentions performed by law enforcement officers are seizures for purposes of the Fourth Amendment. Nevertheless, per Terry they are permitted without a warrant only when the officer acts on a reasonable and articulable suspicion of criminal activity. Id. In that circumstance the officer is permitted to also conduct a pat-down search of the person detained, but only for weapons, not contraband, in order to neutralize the risk of physical harm where the officer is justified in believing that the individual whose suspicious behavior he is investigating is armed and presently dangerous to the officer or to others. Id. Any resulting seizure of weapons or contraband must satisfy the higher probable cause standard.
 {¶ 51} "Concerned with departures from the traditional probable cause requirement that its `reasonable suspicion' standard permits, Terry emphasized that `[a] search for weapons in the absence of probable cause to arrest, however, must like any other search, be strictly circumscribed by the exigencies which justify its initiation.' Id. at 25. Therefore, at most, only `a limited search of the outer clothing for weapons' is permitted. Id.
 {¶ 52} "In Terry the officer who reasonably suspected that Terry had a weapon found a knife inside his coat pocket. That was in 1963. Since then, with the great increase in illicit drug activity, many pat-down searches have yielded not weapons but drugs or drug paraphernalia of various kinds. Concern with potential abuses in that trend prompted the Supreme Court inMinnesota v. Dickerson to prescribe limits on methods used in weapons pat-downs that yield contraband. Building on the `plain view' exception to the warrant requirement, Dickerson held that an officer who is engaged in a weapons pat-down lacks the probable cause required to seize nonthreatening contraband detected through his sense of touch when its criminal character is not immediately apparent to him upon touching it.
 {¶ 53} "The frisking officer in Dickerson felt a small lump in the suspect's front pocket and then, upon further tactile examination, concluded that the object was a lump of crack cocaine in a plastic or cellophane bag, which the officer removed from the suspect's pocket. The Supreme Court held that the seizure of drugs was unlawful because the officer exceeded the bounds of Terry by squeezing, sliding, and manipulating the object. The officer's authority was limited to running his hands over the outer clothing of the suspect to determine if he had a weapon. Once he concluded that there was no weapon, the officer had no further authority to run his hands over the suspect's body. While the lump may have made the officer suspicious, he could not continue to feel the object to confirm those suspicions." Justus, supra, at ¶ 10-13.
 {¶ 54} In the present case, Bucci testified on direct examination that he was concerned when he saw Breisch stuff something down his pants. He believed it "could have been a gun, could have been a knife, it could have been any sort of number of things." As a result, Bucci testified that he decided to "pat him down further" and found the crack pipe. Unfortunately for the State, Bucci's direct examination testimony is devoid of any details concerning the nature of the "pat-down" or the circumstances surrounding his discovery of the crack pipe. On cross examination, Bucci did not mention a pat-down at all. Instead, after Breisch's denial that the object was a weapon, Bucci testified that he "pulled back his waistband and it was just sitting there just in his waist and I removed it[.]" On re-direct examination, the State elicited testimony from Bucci indicating that his search was motivated by concern that Breisch might have not only a weapon but also other contraband.
 {¶ 55} Having carefully examined the transcript, we conclude that Bucci's search exceeded the scope of Terry and did not comply with the "plain feel" requirements set forth inDickerson. There is no testimony that Bucci felt the crack pipe during a weapons pat-down and believed it to be a weapon. Nor is there any testimony that Bucci felt the crack pipe during a weapons pat-down and immediately recognized it as illegal contraband without manipulating it. As we recognized in Justus,
an officer may retrieve contraband discovered during a weapons pat-down only when the identity of the item is readily apparent. The record is devoid of testimony that Bucci felt the crack pipe during a weapons pat-down and immediately recognized it as a crack pipe. The only specific testimony on the issue indicates that Bucci simply pulled back Breisch's waistband and looked inside his pants. As a result, the State failed to establish that Bucci had probable cause to believe the item was illegal contraband before he searched Breisch's pants and seized it.
 {¶ 56} In opposition to the foregoing conclusion, the State asserts only that Breisch waived any argument about the removal of the crack pipe from his pants. In support, the State points out that Breisch's motion to suppress and supporting memorandum did not specifically mention the plain-feel exception to the search warrant requirement. The State further notes that defense counsel did not specifically argue the plain-feel exception during the suppression hearing. The State reasons that "[a]bsent a specific allegation that during the pat-down, the crack pipe was not immediately apparent to the officers to be contraband, neither the court nor the State is given notice that the burden has shifted to the State, and the prosecution will be unable to prepare an adequate response to the defendant's motion." The State argues that the trial court never addressed the plain-feel issue because it was not raised below. Thus, the State reasons that this court likewise cannot consider the issue.
 {¶ 57} Upon review, we do not agree that Breisch waived his challenge to the removal of the crack pipe from his pants. In his suppression motion, Breisch alleged that the search violated the Fourth Amendment. In the accompanying memorandum, he claimed the evidence would show "that his search exceeded the permissible bounds of a `stop and pat' frisk pursuant to Terry v. Ohio,
392 U.S. 1[.]" This assertion was sufficient to put the State on notice that Breisch was challenging the scope of the search and alleging a Fourth Amendment violation. At that point, we believe the State bore the burden of demonstrating the legality of the search, through the plain-feel exception or otherwise.[1]
Moreover, we reject the State's argument that Breisch failed to bring the issue to the trial court's attention. In his post-hearing memorandum, Breisch cited Dickerson, supra, and argued that Bucci's actions exceeded the scope of a permissibleTerry search for weapons.
 {¶ 58} Having determined that Bucci's seizure of the crack pipe violated the Fourth Amendment, we conclude that the trial court erred in failing to suppress it. In light of that conclusion, we reject the State's argument that Bucci properly discovered the crack cocaine in the passenger compartment through a search incident to a lawful arrest. Because Breisch's arrest was not lawful, Bucci lacked authority to search the stopped car. Therefore, the trial court erred in failing to suppress the piece of crack cocaine found near the passenger's seat. Finally, the trial court erred in failing to suppress the statements Breisch made while handcuffed at the scene. Although the trial court concluded that the statements were not the product of police questioning, they nevertheless remain subject to suppression because they undoubtedly were tainted by the illegal search and arrest that had occurred just minutes earlier. Wong Sun v.United States (1963), 371 U.S. 471. Indeed, the record reflects that Breisch made the statements immediately upon being confronted with a piece of crack cocaine that had been seized illegally from the stopped car.
 {¶ 59} Based on the reasoning set forth above, we sustain Breisch's assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Wolff, J., and Grady, J., concur.
[1] The Ohio Supreme Court's ruling in City of Xenia v.Wallace (1988), 37 Ohio St.3d 216, upon which the State relies, is not to the contrary. In Wallace, the Ohio Supreme Court held that a defendant must set forth the grounds upon which he challenges the legality of a search. The prosecution then bears the burden of establishing that the search was lawful. InWallace, the defendant's motion failed to clarify whether the alleged illegality was due to a violation of the Fourth Amendment. It also failed to indicate whether a warrant existed or whether there was a probable cause issue. Here Breisch's memorandum accompanying his motion to suppress expressly alleged that the search of his person exceeded the permissible bounds of a Terry weapons pat-down. In our view, this allegation was sufficient to put the State on notice of the relevant issues. We note too that Breisch's motion identified the Fourth Amendment as the legal basis for his challenge to the search, and suppression hearing testimony established the lack of any warrants.