DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court pursuant to the state's App.R. 12(J) appeal. The state contests the trial court's March 3, 2006 judgment entry suppressing evidence obtained following the April 22, 2005 stop and search of the vehicle driven by defendant-appellee, Corey Rutledge, and occupied by defendant-appellee, Stephani Lavender. For the reasons set forth herein, we affirm the trial court's judgment.
 {¶ 2} On May 5, 2005, appellees Rutledge and Lavender were indicted on trafficking cocaine, in violation of R.C. 2925.03(A)(2)(C)(4)(d), possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(c), and trafficking in marihuana, in violation of R.C. 2925.03(A)(2)(C)(3)(c). Lavender was also indicted on possession of OxyContin, in violation of R.C. 2925.11(A)(C)(1)(a). On May 27, 2005, appellees each entered not guilty pleas to the charges in the indictment.
 {¶ 3} Thereafter, appellees filed motions to suppress the evidence obtained as a result of the stop. The crux of their arguments was that, absent reasonable articulable suspicion, once the purpose of the stop had been completed the trooper had no basis to prolong the detention.
 {¶ 4} The facts as presented at the September 19, 2005 suppression hearing are as follows. On April 22, 2005, at approximately 5:00 p.m., Ohio State Highway Patrol Officer Ryan Anderson was on routine patrol on southbound Interstate I-75, in Wood County, Ohio, when he observed a red Ford Mustang, with an Indiana license plate, change lanes three times without signaling. Trooper Anderson stopped the vehicle.
 {¶ 5} Trooper Anderson approached the vehicle from the passenger side to speak with the driver, Rutledge. Anderson determined that the vehicle was a rental; he asked Rutledge to come back to his patrol car while he completed a check on his driving record and criminal history. Anderson stated that while Rutledge was in the patrol car he seemed very nervous and fidgety. Trooper Anderson asked appellant where he was going; Anderson also questioned Lavender about their trip while Rutledge remained in the patrol car. Anderson stated that their stories were consistent. Anderson asked Lavender whether there was anything illegal in the vehicle; she said no.
 {¶ 6} After the record checks came back with no problems, Trooper Anderson issued Rutledge a warning and told him that he was "free to go." Trooper Anderson testified that at that point there was "nothing further that needed to be done." As Rutledge was walking back to his vehicle Anderson asked him if it was okay if he asked Rutledge a few questions. Rutledge answered affirmatively. Trooper Anderson asked him whether he had anything illegal in his vehicle. Rutledge stated no. Anderson then asked if Rutledge minded if he searched the vehicle. Rutledge indicated that Anderson should ask his wife (actually his fianc Eacute; e at the time.) Anderson responded that because Rutledge's name was on the rental agreement, he was the one to give permission to search. However, Anderson did approach the passenger window to ask Lavender for her consent to search; he then observed marihuana residue on the inside of the passenger window.
 {¶ 7} At that point, Trooper Anderson informed Rutledge that he was under "investigative detention" and brought him back to the patrol car. Anderson then radioed for assistance. When the troopers searched the vehicle they found a pound of marihuana and a baggy of cocaine in the trunk. The troopers also found a marihuana "blunt" in Lavender's purse and OxyContin pills in her coat. Following the search, appellees were given the Miranda warnings and placed under arrest. After being transported to the justice center, Lavender was searched and $1,900 was found in her bra and marihuana residue was found in her anal cavity.
 {¶ 8} Rutledge testified that even though Trooper Anderson told him that he was free to go, he did not feel that he could leave because Anderson kept asking him questions. Rutledge indicated that he felt obligated to answer the questions and cooperate because Anderson was a police officer.
 {¶ 9} On March 3, 2006, the trial court granted appellees' motions to suppress finding that the search was invalid because the parties had been unlawfully detained after the purpose of the stop was fulfilled. The state was granted leave to file this consolidated appeal and raises the following assignment of error.
 {¶ 10} "I. The trial court incorrectly found that the physical evidence and inculpatory statements resulted from an unlawful detention and ruled them inadmissible."
 {¶ 11} We note that when reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 12} In its sole assignment of error the state challenges the trial court's finding that the purpose of the stop had been fulfilled and that, accordingly, there was no lawful reason to further detain appellees. The state argues that because only 16 minutes elapsed between the time of the stop until the search of the vehicle, the detention was reasonable and the subsequent search was proper based upon the plain view exception to the warrant requirement. The state further argues that once the purpose of the stop had been completed, the traffic stop became a consensual encounter.
 {¶ 13} After careful review of the record and the applicable case law, we conclude that the duration of the stop is not the determinative issue in this case. At issue is whether, once the warning had been given and Rutledge was told he was free to go, the continued detention of the parties was reasonable.
 {¶ 14} The scope and duration of an investigative stop must not exceed what is necessary to complete the purpose for which the initial stop was made. Florida v. Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319,75 L.Ed.2d 229; State v. Robinette (1997), 80 Ohio St.3d 234,685 N.E.2d 762, paragraph one of the syllabus; State v. Chatton (1984),11 Ohio St.3d 59, 63. "In conducting an investigative traffic stop, an officer may detain a motorist for a period of time sufficient to run a computer check on his license, registration, and vehicle plates and to issue him a warning or a citation." State v. Rusnak (1997), 120 Ohio App.3d 24,27, citing Delaware v. Prouse (1979), 440 U.S. 648, 659, 99 S.Ct. 1391,59 L.Ed.2d 660. An officer, however, cannot use the lawfulness of an initial stop to conduct a fishing expedition for evidence of another crime. State v. Bevan (1992), 80 Ohio App.3d 126, 130. Whether or not a detention is reasonable depends upon the totality of the circumstances and the facts of each case. State v. Bobo (1988), 37 Ohio St.3d 177,178.
Similar to present facts, in State v. Smotherman (July 29, 1994), 6th Dist. No. 93WD082, the defendant was stopped for speeding and for having a defective bumper. After running a license check, the trooper issued a written warning and told the defendant that he was free to leave. However, "within seconds after handing appellant the written warning and telling him he could leave, the trooper asked to search appellant's vehicle." Id. The trooper indicated that he requested to search the vehicle because it had a "lived in look" with fast-food wrappers. Id. Reversing the trial court's denial of the motion to suppress, this court concluded that fast-food wrappers in a vehicle did not constitute reasonable suspicion of criminal activity. Id. The court acknowledged the existence of a practice among Ohio police agencies to detain individuals and seek consent to search vehicles stopped for a traffic violation where "officers have little or no suspicion that the occupants are engaged in any criminal behavior whatsoever or that the vehicle contained any contraband." Id. See State v. Retherford (1994),93 Ohio App.3d 586.
 {¶ 15} In this case, Trooper Anderson never articulated his reason for requesting to search the vehicle. Rutledge's license and criminal checks came back fine, both appellees denied having any illegal drugs or weapons in the vehicle, and appellees' stories about their trip were consistent. The only factor that Trooper Anderson points to was that Rutledge appeared nervous. When looking at the totality of the circumstances, we find that this fact alone did not serve as a reasonable basis to find that criminal activity was afoot.
 {¶ 16} Based on the foregoing, we find that the trial court did not err when it granted appellees' motions to suppress. The state's assignment of error is not well-taken.
 {¶ 17} On consideration whereof, we find that substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
PETER M. HANDWORK, J., JUDGE; MARK L. PIETRYKOWSKI, J., JUDGE; ARLENE SINGER, P.J., JUDGE Concur.