OPINION *Page 2 
{¶ 1} Defendant-Appellant, Brian O'Neal, appeals the judgment of the Allen County Court of Common Pleas denying his motion to suppress evidence. On appeal, O'Neal argues that the trial court erred in denying his motion to suppress because his detention was beyond the scope of the stop resulting in an unlawful seizure and because the search was not consensual or incident to a lawful arrest. Finding that O'Neal's detention was not beyond the scope of the stop and that the search was consensual, we affirm the judgment of the trial court.
 {¶ 2} In August 2006, Lima police officers recovered marijuana from O'Neal's vehicle during a traffic stop.
 {¶ 3} In October 2006, the Allen County Grand Jury indicted O'Neal for one count of possession of marijuana in violation of R.C.2925.11(A),(C)(3)(d), a felony of the third degree. Thereafter, O'Neal entered a not guilty plea.
 {¶ 4} In November 2006, O'Neal moved to suppress the evidence of marijuana and statements that he made to the police.
 {¶ 5} In January 2007, the trial court held a hearing on O'Neal's motion to suppress, during which the following testimony was heard.
 {¶ 6} Officer Jason Bugh of the Lima Police Department testified that, on August 29, 2006, he observed O'Neal driving in the city of Lima; that he pulled O'Neal over because he knew that O'Neal was under drug suspension and did not *Page 3 
have a valid driver's license; that driving under suspension is an arrestable offense; that O'Neal admitted that he did not have a valid license; that, at that point, Officer Randall Tigner arrived and dispatch confirmed that O'Neal's license was suspended; that he asked O'Neal to step out of the car and then asked if he "could have consent to search the vehicle and [O'Neal] said, yes" (hearing tr., p. 10); that, when he asked for permission to search, he had not yet decided whether or not he would impound the vehicle; that, upon searching the vehicle, he discovered marijuana residue "crumbs" in the front compartment under the seat; that he asked O'Neal "can I go and search the trunk" and O'Neal said "yes" (hearing tr., p. 12); that he then searched the trunk, opened a closed cooler in the trunk, and discovered six pounds of marijuana; that O'Neal did not place any limitations on the areas of the vehicle he could search; that he did not specifically ask for permission to search the cooler; that he arrested O'Neal after discovering the marijuana in the cooler and told him he was calling a narcotics officer to the scene, to which O'Neal responded "that's mine" (hearing tr., p. 13); and, that he wrote O'Neal a citation for driving under suspension after he completed the search of the vehicle.
 {¶ 7} O'Neal testified that, after Officer Bugh pulled him over, "he told [him] to shut the car off. And as [he] shut the car off [Officer Bugh] told [him] to get out of the car. And as [he] was getting out of the car [Officer Bugh] took the *Page 4 
car keys out of [his] hand and put them in his pocket" (hearing tr., p. 45); that Officer Bugh never asked him for his license until after the search of his car had been conducted and that he never admitted that his license was not valid; that, after asking him to exit the car, Officer Bugh asked "was there anything in the car," and he replied "no," and Officer Bugh asked "could I look?" and he replied "you're going to do what you want to do anyway" (hearing tr., p. 52); and, that Officer Bugh did not ask his permission to search the trunk of the vehicle, nor did he give his consent.
 {¶ 8} Officer Tigner of the Lima Police Department testified that he was present during Officer Bugh's stop of O'Neal; that Officer Bugh asked O'Neal "if he minded if he searched his vehicle" (hearing tr., p. 6); that O'Neal said "something along the lines like, go ahead, you're going to anyway" (hearing tr., p. 6); that "after Officer Bugh was finished in the passenger area he came out of the vehicle and asked, how do you get into the trunk? [O'Neal] said, `you got the keys. I gave them to you'" (hearing tr., p. 8); that Officer Bugh asked O'Neal if he could search the vehicle's trunk and O'Neal responded in the affirmative; and, that the entire search of the interior of the vehicle lasted approximately five to ten minutes. *Page 5 
 {¶ 9} Subsequently, the trial court overruled O'Neal's motion to suppress the evidence of marijuana and statements[1], stating, in part:
 The court further finds that Officer Bugh had reasonable and articulable suspicion of criminal activity beyond the reason of the initial stop that justified the continued detention of defendant. Small portions of marijuana were found on the floor of the front seat of the vehicle defendant was driving. At this point, Officer Bugh testified that he secured a [sic] consent from defendant to search the remaining vehicle, including the trunk portion. * * *
 As to the search of the defendant's trunk, the Court refers to New York v. Belton (1981), 453 U.S. 454. While Belton did not involve the consent to search, but a search incident to arrest, the court held that containers within the passenger compartment, whether open or closed are also within the reach of the arrestee and subject to incidental search.
 The Ohio Supreme Court in State v. Murrell
(2002), 94 Ohio St.3d 489, also followed Belton, supra, and held that when a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. In this instance, the Court finds that defendant gave his consent to Officer Bugh and that the cooler, located in the trunk, included the area for the consent search.
(Judgment Entry, pp. 7-8).
 {¶ 10} In March 2007, O'Neal withdrew his not guilty plea and entered a plea of no contest. Subsequently, the trial court convicted O'Neal of possession of marijuana. *Page 6 
 {¶ 11} In April 2007, the trial court sentenced O'Neal to a three-year prison term and ordered him to pay a fine of $5,000.
 {¶ 12} It is from this judgment that O'Neal appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT COMMITTED AN ERROR OF LAW IN DENYING THE MOTION TO SUPPRESS FOR THE DETENTION WAS BEYOND THE SCOPE OF THE STOP RESULTING IN AN UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT.
 Assignment of Error No. II THE TRIAL COURT COMMITTED AN ERROR OF LAW IN DETERMINING THAT THE SEARCH WAS CONSENUAL [SIC] AND INCIDENT TO A LAWFUL ARREST.
 {¶ 13} The following standard of review applies throughout.
 Standard of Review {¶ 14} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." State v. Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing United States v.Martinez (11th Circ. 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented.State v. Johnson (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial *Page 7 
court's findings of facts so long as they are supported by competent, credible evidence. State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20. The appellate court must then review the application of the law to the facts de novo. Roberts, supra, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8.
 Assignment of Error No. I {¶ 15} In his first assignment of error, O'Neal asserts that the trial court erred in denying his motion to suppress evidence because his detention was beyond the scope of the stop, resulting in an unlawful seizure under the Fourth Amendment. Specifically, O'Neal claims that Officer Bugh illegally delayed the duration of the traffic stop beyond its purpose, which was completed once he received confirmation that O'Neal's license was suspended and decided not to arrest him. We disagree.
 {¶ 16} Initially, we note that the State contends that O'Neal may not raise this assignment of error on appeal because he did not raise it at the trial court level. Specifically, the State contends that O'Neal did not argue that the detention was beyond the scope of the stop in his motion to suppress or in his written closing argument to the suppression hearing.
 {¶ 17} In City of Xenia v. Wallace (1988), 37 Ohio St.3d 216, at paragraph one of the syllabus, the Supreme Court of Ohio held that "[t]o suppress evidence *Page 8 
obtained pursuant to a warrantless search or seizure, the defendant must * * * raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." Therefore, "[f]ailure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal." Id. at 218. In Wallace, the defendant did not file a memorandum in support of his motion to suppress or specify the Fourth Amendment as the basis. Nevertheless, the Supreme Court found that, where a defendant's line of questioning at a suppression hearing concentrates on a Fourth Amendment violation and the prosecutor does not object to it, the State receives adequate notice of the basis for the defendant's challenge.
 {¶ 18} Here, although O'Neal's motion to suppress dealt primarily with the issue of probable cause to stop the vehicle, O'Neal specifically argued that the stop of his vehicle did not meet the Fourth Amendment standard of reasonableness. Additionally, O'Neal's line of questioning during the suppression hearing as to when Officer Bugh confirmed that O'Neal's license was suspended, when he wrote the citation, at what point he decided to impound the vehicle, and how long the overall search took, alluded to the overall reasonableness of the continued detention, to which the State did not object. Further, O'Neal's written closing argument referred to Officer Bugh's actions as a "fishing expedition for drugs" and argued that he had "no articulable reason to detain [O'Neal] beyond *Page 9 
writing him a citation for speeding and [running a] computer check regarding his driving privileges." Thus, we find that the arguments in O'Neal's motion to suppress and closing argument, combined with his line of questioning, were sufficient to give the State notice that he was challenging the scope of the stop. See State v. Breisch, 2d Dist. No. 20908, 2005-Ohio-6827, at ¶ 57. Accordingly, we now address O'Neal's argument.
 {¶ 19} The Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment nor Section 14, Article I explicitly requires that violations of its provisions against unlawful searches and seizures be remedied by suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 649.
 {¶ 20} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, Wallace, 37 Ohio St.3d at paragraph two of the syllabus; State v. Kessler (1978),53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. Maumee v. Weisner, 87 Ohio St.3d 295, 297, 1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b). *Page 10 
 {¶ 21} The United States Supreme Court has held that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on `unreasonable searches.'" United States v. Jacobsen (1984), 466 U.S. 109, 124. Therefore, "[t]he scope and duration of an investigative stop must not exceed what is necessary to complete the purpose for which the initial stop was made." State v. Lavender, 6th Dist. Nos. WD-06-020 WD-06-021,2006-Ohio-6632, ¶ 14, citing Florida v. Royer (1983), 460 U.S. 491, 500, and State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus. More specifically, a police officer conducting an investigative traffic stop may lawfully detain the motorist for a reasonable amount of time necessary to check his license, registration, and plates, and to give him a warning or a citation. Lavender, supra, citing State v. Rusnak (1997), 120 Ohio App.3d 24, 27. However, a police officer "[c]annot use the lawfulness of an initial stop to conduct a fishing expedition for evidence of another crime." Lavender, supra, citing State v. Bevan (1992), 80 Ohio App.3d 126, 130.
 {¶ 22} In Robinette, Ohio's definitive case on the reasonableness of a stop, the Supreme Court held that evidence obtained after the reason for the stop had ended must be suppressed. In doing so, the Supreme Court reasoned:
 When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the *Page 11 purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.
Robinette, 80 Ohio St.3d at paragraph one of the syllabus.
 {¶ 23} The Supreme Court of Ohio recently elaborated onRobinette in Blue Ash v. Kavanagh, 113 Ohio St.3d 67, 2007-Ohio-1103. InKavanagh, a police officer stopped the defendant for having expired license plates and then discovered that his operator's license was also expired. Because Kavanagh could not lawfully drive the vehicle away, the officer decided to impound the vehicle. While awaiting impoundment, the officer deployed his narcotics detection dog, the dog alerted, and the officer then searched the vehicle and discovered contraband. The Supreme Court distinguished his situation from Robinette on two bases. Firstly, Kavanagh's detention after the dog alerted was lawful and related to the purpose of the original stop, because he had been stopped for driving with expired tags and, therefore, was waiting for a tow truck for impoundment at the time the dog alerted. Secondly, unlike inRobinette where the defendant was stopped for speeding and could have legally driven away after the stop, Kavanagh could not have legally driven away due to his expired tags and license.
 {¶ 24} Here, we find that Officer Bugh's purpose for searching O'Neal's vehicle was related to the purpose of the stop. O'Neal was validly stopped for *Page 12 
driving under suspension and Officer Bugh requested permission to search the vehicle prior to completing the paperwork for the citation, issuing a warning to O'Neal, or impounding the vehicle. Additionally, because O'Neal had no valid driver's license, he could not have legally driven away after the stop. Thus, we find that the stop was not unreasonably prolonged beyond the time necessary to complete the purpose of the original stop.
 {¶ 25} Accordingly, we overrule O'Neal's first assignment of error.
 Assignment of Error No. II {¶ 26} In his second assignment of error, O'Neal asserts that the trial court committed an error of law in determining that the search was consensual and incident to a lawful arrest. Specifically, O'Neal asserts that, under a totality of the circumstances test, he did not freely and voluntarily consent to a search of his vehicle, trunk, or cooler.
 {¶ 27} When an individual voluntarily consents to a search, there is no Fourth Amendment violation. State v. Bickel, 5th Dist. No. 2006-COA-034, 2007-Ohio-3517, citing United States v. Drayton (2002),536 U.S. 194, 207; Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. Where that individual has been unlawfully detained by law enforcement, the State must demonstrate that, under the totality of the circumstances, "a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact *Page 13 
leave." Robinette, 80 Ohio St.3d at paragraph three of the syllabus, citing Royer, supra, and Schneckloth, supra. However, where that individual has not been illegally detained, "* * * the state need not demonstrate that [the individual's] consent was an independent act of free will. Rather, the state must illustrate that the totality of the circumstances establish that [the individual] voluntarily consented to the search." State v. Stephenson, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶ 15
(citations omitted).
 {¶ 28} Additionally, although the scope of a consent search is limited to the extent of consent, "a defendant's general consent to search his car has been held to include a consent to search closed containers found inside." State v. Howard, 2d Dist. No. 20321, 2004-Ohio-5287, ¶ 38, citing Florida v. Jimeno (1991), 500 U.S. 248.
 {¶ 29} Here, having determined that O'Neal's detention was not illegal, the State need only establish that the totality of the circumstances demonstrated that O'Neal voluntarily consented to the search. At the suppression hearing, testimony was presented that, when Officer Bugh asked to search his vehicle, O'Neal said "yes" and "go ahead, you're going to anyway"; that Officer Bugh asked O'Neal if he could search the trunk of the car, to which O'Neal agreed; and, that O'Neal indicated Officer Bugh had the keys to the trunk. Although O'Neal's testimony contradicts this testimony, the trial court serves as the trier of fact and is the *Page 14 
primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. See Johnson, supra. We find that the testimony provides competent, credible evidence to support the trial court's finding that O'Neal voluntarily consented to the search of the vehicle, trunk, and closed cooler.
 {¶ 30} Additionally, we note that O'Neal contends the trial court found that the search was incident to arrest because it referred in its judgment entry to New York v. Belton, supra, and State v. Murrell, supra, which concerned searches incident to arrest. However, upon review, it is clear that the trial court did not make such a determination. The trial court's referral to these cases appears to be solely for the proposition that the ability to search a vehicle's trunk includes the ability to search any containers in that trunk. Moreover, the trial court explicitly stated its finding that O'Neal consented to a search of the car, trunk, and cooler.
 {¶ 31} Accordingly, we overrule O'Neal's second assignment of error.
 {¶ 32} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur. r
[1] We note that O'Neal does not contest the trial court's overruling of his motion to suppress the statements on appeal. *Page 1