[Cite as *State v. Burwell*, 2010-Ohio-1087.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO. 12-09-06

    v.

EDWARD L. BURWELL,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Putnam County Court
Trial Court No. 2009 TRC 0078

**Judgment Affirmed**

Date of Decision:     March 22, 2010

APPEARANCES:

    *Matthew A. Cunningham*  for Appellant

    *Gary L. Lammers*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Edward L. Burwell ("Burwell"), appeals the Putnam County Court's judgment overruling his motion to suppress evidence seized as a result of a traffic stop. For the reasons that follow, we affirm.

{¶2} Around 1:52 a.m. on May 23, 2009, Burwell was traveling north on State Route 65 in the village of Ottawa, Putnam County, Ohio. (Aug. 12, 2009 Tr. at 7). Ohio State Highway Patrolman Kingsinger was following Burwell's vehicle in a marked State Highway Patrol cruiser about eight to ten (8-10) car lengths behind when he observed Burwell's vehicle "travel off the right side of the edge line, right [white] edge line, * * * and turn left into Blackthorn Drive." (Id. at 6-7, 10). Trooper Kingsinger testified that it appeared as though Burwell was making a wide right turn but then turned left onto Blackthorn Drive. (Id. at 9). Trooper Kingsinger then activated his patrol car's overhead lights and initiated a traffic stop. (Id. at 12).

{¶3} When Trooper Kingsinger approached Burwell's vehicle, he detected the smell of alcohol coming from the vehicle and noted that Burwell's eyes were "slightly glassy and bloodshot." (Id.). Trooper Kingsinger asked Burwell to exit his vehicle and asked him to sit in his patrol car. (Id. at 13). Once Trooper Kingsinger was seated in his patrol car with Burwell, he discovered that "the odor of alcoholic beverage became stronger on his breath," so Trooper

Kingsinger asked Burwell if he had been drinking, and Burwell said he had "a couple." (Id.). Burwell consented to a horizontal gaze nystagmus (HGN) test, which revealed a maximum score of six indicators. (Id. at 13-14, 16). Burwell then consented to some divided attention skills tests, including the walk and turn and the one-leg stand. (Id. at 17). When Burwell attempted the walk and turn test, Trooper Kingsinger found that he demonstrated signs of impairment, including that Burwell: failed to follow instructions, taking eight steps instead of nine steps, stepped off the line, and swayed. (Id. at 18-19). When Burwell attempted the one-leg stand, Burwell swayed and put his foot down once. (Id. at 20). At that point, Burwell was placed under arrest for operating a vehicle under the influence of alcohol. (Id. at 21).

{¶4} Burwell was charged, in case no. 2009 TRC 00778, with operating a vehicle under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1), a first violation within six (6) years; driving with a prohibited blood-alcohol-concentration in violation of R.C. 4511.19(A)(1)(d), a first violation within six (6) years; and, in case no. 2009 TRD 00779, with failure to drive within marked lanes in violation of R.C. 4511.33. (Doc. No. 1).

{¶5} On May 27, 2009, Burwell entered a plea of not guilty to the charges. (Doc. No. 2). On July 10, 2009, Burwell filed a motion to suppress evidence seized as a result of the traffic stop. (Doc. No. 18). On August 12, 2009,

the motion came on for hearing, and, on August 14, 2009, the trial court overruled the motion. (Doc. No. 28).

{¶6} On September 1, 2009, Burwell withdrew his previously tendered plea of not guilty and entered a plea of no contest to the charge of operating a vehicle while under the influence in violation of R.C. 4511.19(A)(1). (Doc. No. 32). The two other charges of operating with a prohibited blood-alcohol-concentration and marked lanes violation were both dismissed. (Doc. No. 32). The trial court found Burwell guilty of operating a vehicle while under the influence and sentenced him. (Id.).

{¶7} On September 30, 2009, Burwell filed a notice of appeal. (Doc. No. 34). Burwell now appeals raising two assignments of error for our review.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT OVERRULED BURWELL'S MOTION TO SUPPRESS EVIDENCE WHERE REASONABLE ARTICULABLE SUSPICION DID NOT EXIST FOR A TRAFFIC STOP OR TO DETAIN BURWELL.**

{¶8} In his first assignment of error, Burwell argues that the trial court erred by overruling his motion to suppress evidence obtained as a result of the traffic stop. Specifically, Burwell argues that crossing the white edge line without evidence of erratic driving or concerns for his safety does not provide reasonable articulable suspicion for a traffic stop, citing *State v. Phillips*, 3d Dist. No. 8-04-25, 2006-Ohio-6338. Burwell also maintains that this case is distinguishable from

*State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, because: he only crossed the fog line once and the defendant in *Mays* crossed the line twice; he was not weaving within his lane as was the defendant in *Mays*; and the officer here, unlike in *Mays*, initiated the traffic stop based on a "hunch or gut feeling." We disagree.

{¶9} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside*, 2003-Ohio-5327, at ¶8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539.

{¶10} As this Court has stated before, in order to constitutionally stop a vehicle, an officer must, at a minimum, have either: (1) a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent; or (2) a reasonable suspicion, supported by specific and

articulable facts, that the vehicle should be stopped in the interests of public safety. *State v. Moore*, 3d Dist. No. 9-07-60, 2008-Ohio-2407, ¶10, citing *State v. Andrews*, 3d Dist. No. 2-07-30, 2008-Ohio-625, ¶8, citing *State v. Chatton* (1984), 11 Ohio St.3d 59, 61, 463 N.E.2d 1237, certiorari denied by 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116; *State v. Purtee*, 3d Dist. No. 8-04-10, 2006-Ohio-6337, ¶9, citing *State v. Norman* (1999), 136 Ohio App.3d 46, 53-54, 735 N.E.2d 453.

**{¶11}** An officer's "reasonable suspicion" is determined based on the totality of the circumstances. *Moore*, 2008-Ohio-2407, at ¶11, citing *Andrews*, 2008-Ohio-625, at ¶8, citing *State v. Terry* (1998), 130 Ohio App.3d 253, 257, 719 N.E.2d 1046, citing *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. "'Specific and articulable facts' that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *Purtee*, 2006-Ohio-6337, at ¶9, citing *State v. Gaylord*, 9th Dist. No. 22406, 2005-Ohio-2138, ¶9, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178-79, 524 N.E.2d 489; *State v. Davison*, 9th Dist. No. 21825, 2004-Ohio-3251, ¶6.

**{¶12}** This Court recently rejected arguments similar to those raised by Burwell in *State v. Anthony*, 3d Dist. No. 13-09-26, 2009-Ohio-6717, ¶¶13-14. Trooper Kingsinger testified that he initiated the traffic stop after Burwell drifted

over the white edge [fog] line in violation of R.C. 4511.33. (Aug. 12, 2009 Tr. at 7-12, 24); (Joint Ex. 1). Trooper Kingsinger testified that both right tires of Burwell's vehicle drifted over the white edge (fog) line as he made a left-hand turn. (Id. at 9). Trooper Kingsinger testified that it appeared as though Burwell was making a wide right turn but then turned left onto Blackthorn Drive. (Id.). Trooper Kingsinger further testified that he did not observe any debris or any reason otherwise for the vehicle to have drifted over the white edge (fog) line, and that he had a clear view of the incident. (Id. at 9-10). The Ohio Supreme Court has held that "a traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, *even without further evidence of erratic or unsafe driving*." *Mays*, 2008-Ohio-4539, at ¶25 (emphasis added) (abrogating *State v. Phillips*, 2006-Ohio-6338). Based upon this observation, Trooper Kingsinger had probable cause, and thus a reasonable articulable suspicion, to initiate the traffic stop; and therefore, the traffic stop was constitutionally valid. *Anthony*, 2009-Ohio-6717, at ¶13, citing *Mays*, 2008-Ohio-4539, at ¶¶16, 21, 24-25.

{¶13} We are also not persuaded by Burwell's attempts to distinguish this case from *State v. Mays*, 2008-Ohio-4539. To begin with, the record does not support his assertion that Trooper Kingsinger initiated the traffic stop based on a "hunch or gut feeling." Although Trooper Kingsinger testified that he turned on

his video recording device prior to the R.C. 4511.33 violation based on a "gut feeling," he testified that he initiated the traffic stop based upon the marked lanes violation. (Aug. 12, 2009 Tr. at 7-12, 24). Furthermore, our determination of whether the traffic stop was supported by a reasonable articulable suspicion depends upon the objective facts, not the officer's subjective intentions or motivations. *State v. Vlachos*, 3d Dist. No. 17-08-24, 2009-Ohio-915, ¶11, citing *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091. We are also not persuaded by Burwell's attempt to distinguish this case from *Mays* by arguing that Trooper Kingsinger did not observe him weaving within his lane, and he only crossed over the white edge line once. The holding in *Mays* clearly states otherwise. 2008-Ohio-4539, at ¶25 ("a traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the [solid white edge (fog) line] in violation of R.C. 4511.33, *even without further evidence of erratic or unsafe driving*.") (emphasis added).

{¶14} Aside from Burwell's violation of R.C. 4511.33, the evidence presented at the suppression hearing demonstrated an additional, independent reason justifying the stop. Officer Kingsinger testified that Burwell made what appeared to be "a wide right turn, but he turned left." (Aug. 12, 2009 Tr. at 9). A review of the cruiser video tape, joint exhibit one (1), reveals that Burwell swung his vehicle wide right over the white edge (fog) line to go left onto Blackthorn

Drive. (Joint Ex. 1); (Aug. 12, 2009 Tr. at 7). Under these circumstances, Trooper Kingsinger had a reasonable articulable suspicion to stop Burwell for violating R.C. 4511.36(A)(2), for an improper left turn. See *State v. Coles* (June 7, 1996), 4th Dist. No. 95CA166; *City of Brian v. Alwood* (Sept. 14, 1979), 6th Dist. No. WMS-79-4.[1] Accordingly, *even if* the trial court's reliance upon R.C. 4511.33, the marked lanes statute, as a constitutional basis for the traffic stop was in error (which we did not find), the trial court's error would be harmless since Trooper Kingsinger had an independent reason to initiate the traffic stop based upon Burwell's violation of R.C. 4511.36(A)(2). *State v. Moore*, 2008-Ohio-2407, at ¶17, citing *State v. Haynes*, 11th Dist. No. 2003-A-0055, 2004-Ohio-3514, ¶¶16-17 (concluding that the trial court's error was harmless because the officer had testified to events, which he did not cite defendant for, that would have given him probable cause to effectuate the traffic stop on defendant); *State v. Molk*, 11th Dist. No. 2001-L-146, 2002-Ohio-6926 (concluding that even if appellant were able to contradict the officer's testimony regarding a speeding violation, the officer would still have had a sufficient justification to initiate a stop due to appellant's smoking exhaust violation).

---

[1] Both of these cases cite R.C. 4511.36(B) instead of R.C. 4511.36(A)(2) as we have cited herein because the statute was modified by S.B. 123 (eff. 1-1-04). The language of the former is, however, identical to the later.

**{¶15}** Burwell's first assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED WHEN IT OVERRULED BURWELL'S MOTION TO SUPPRESS ON THE BASIS THAT THE ARRESTING OFFICER DID NOT HAVE PROBABLE CAUSE TO ARREST BURWELL.**

**{¶16}** In his second assignment of error, Burwell argues that the trial court erred in overruling his motion to suppress evidence flowing from the officer's improper detention, which resulted in his arrest for OVI.[2] Specifically, Burwell argues that the fact that Trooper Kingsinger smelled an unquantifiable amount of alcohol from the vehicle—as opposed to from him, observed that his eyes were slightly red and glassy, and that he admitted to drinking was insufficient to justify his continued detention for field sobriety tests. As such, Burwell argues that any evidence seized as a result of his continued detention was inadmissible; and therefore, the trial court erred by overruling his motion to suppress on this basis. We disagree.

**{¶17}** "The scope and duration of an investigative stop must not exceed what is necessary to complete the purpose for which the initial stop was made." *State v. Lavender*, 6th Dist. Nos. WD-06-020, WD-06-021, 2006-Ohio-6632, ¶14, citing *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d

---

[2] Although his assignment of error is worded as such, Burwell makes no argument with respect to a lack of probable cause for his arrest. We will, therefore, limit our review to the issue of continued detention.

229, and *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph one of the syllabus. "In conducting an investigative traffic stop, an officer may detain a motorist for a period of time sufficient to run a computer check on his license, registration, and vehicle plates and to issue him a warning or a citation." *State v. Rusnak* (1997), 120 Ohio App.3d 24, 27, 696 N.E.2d 633, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660. "An officer, however, cannot use the lawfulness of an initial stop to conduct a fishing expedition for evidence of another crime." *Lavender*, 2006-Ohio-6632, at ¶14, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099. Whether or not a detention is 'reasonable' depends upon the totality of the facts and circumstances of each case. *Bobo*, 37 Ohio St.3d at 178.

{¶18} Once an officer stops a vehicle for a traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for operating a vehicle under the influence (OVI) if the officer has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is under the influence. *State v. Evans* (1998), 127 Ohio App.3d 56, 62-63, 711 N.E.2d 761, citing *State v. Yemma* (Aug. 9, 1996), 11th Dist. No. 95-P-0156.

{¶19} An officer's request to perform field sobriety tests must be separately justified by specific, articulable facts showing a reasonable basis for the request. *Evans*, 127 Ohio App.3d at 62-63, citing *Yemma*, 11th Dist. No. 95-P-0156. "Although the facts that served as the impetus for the stop may also assist in providing this separate justification, additional articulable facts are necessary." Id.

{¶20} Whether a law enforcement officer possessed reasonable suspicion or probable cause to continue to detain an individual must also be examined in light of the "totality of the circumstances." *State v. Cromes*, 3d Dist. No. 17-06-07, 2006-Ohio-6924, ¶38, citing *United States v. Arvizu* (2002), 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740. The totality of the circumstances test "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id., citing *Arvizu*, 534 U.S. at 273, quoting *United States v. Cortez* (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶21} Circumstances from which an officer may derive a reasonable, articulable suspicion that the detained driver was operating the vehicle while under the influence include, but are not limited to:

> **(1)   the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop**

- 12 -

**(e.g., whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.**

*Evans*, 127 Ohio App.3d at 63, Fn. 2. "All of these factors, together with the officer's previous experience in dealing with [impaired] drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative." Id.

{¶22} In relevant part, the record indicates that Burwell was stopped around 1:52 a.m. on May 23, 2009, which was the early hours of Saturday morning, after Trooper Kingsinger observed Burwell drift over the right edge (fog) line while swinging right to make a wide turn to the left from State Route 65 onto Blackthorn Drive. (Aug. 12, 2009 Tr. at 7-9); (Joint Ex. 1). After Trooper Kingsinger approached Burwell's vehicle, he identified the smell of an alcoholic beverage coming from inside the vehicle and noticed that Burwell's eyes appeared

to be "slightly glassy and bloodshot." (Aug. 12, 2009 Tr. at 12). Burwell's speech was not noticeably slurred or overly deliberate, and Burwell cooperated with Trooper Kingsinger when asked to provide his driver's license and registration. (Id. at 12-13); (Joint Ex. 1). Trooper Kingsinger testified that, after Burwell was seated in his patrol cruiser, "the odor of alcoholic beverage became stronger upon [Burwell's] breath, and then [he] asked [Burwell] if he had consumed any alcohol." (Aug. 12, 2009 Tr. at 13); (Joint Ex. 1). Burwell admitted that he had "a couple earlier," and that he had just come back from playing for a band. (Aug. 12, 2009 Tr. at 13); (Joint Ex. 1). After Burwell made this admission, Trooper Kingsinger asked Burwell if he could conduct an HGN test, and Burwell consented to the test. (Aug. 12, 2009 Tr. at 13); (Joint Ex. 1).

{¶23} The facts here demonstrate that Burwell was stopped after driving over the white edge (fog) line when turning wide right for a left-hand turn in the early hours (1:52 a.m.) of Saturday morning after he had just returned from playing in his band. (Aug. 12, 2009 Tr. at 7-13); (Joint Ex. 1). We also note, although not mentioned during the hearing, that it appeared that Burwell's vehicle was slightly weaving within its lane of travel as well. (Joint Ex. 1). In addition to that, Trooper Kingsinger noted that Burwell's vehicle—and, more importantly, Burwell himself—smelled of an alcoholic beverage, and that Burwell's eyes were "slightly bloodshot and glassy." (Aug. 12, 2009 Tr. at 12-13). Finally, when asked

if he had been drinking, Burwell admitted to drinking "a couple earlier," after playing with his band. (Id. at 13). After reviewing the entire record, including the transcript of the suppression hearing and the jointly admitted video of the traffic stop, as well as those factors outlined in *Evans*, supra, we cannot conclude that the trial court erred in finding that Burwell's continued detention was constitutionally permissible.

**{¶24}** Burwell's citation to various appellate court decisions fails to persuade us otherwise. The Court in *State v. Taylor*, found that "[t]he act of speeding at a nominal excess coupled with the arresting officers' perception of the odor of alcohol, and *nothing more*, did not furnish probable cause to arrest the defendant for driving under the influence." (1981), 3 Ohio App.3d 197, 197-98, 444 N.E.2d 481 (emphasis in original). The Court in *Taylor* also expressed the fact that the officer in that case did not even specify whether the odor of alcohol was "pervasive" or "strong," which it indicated may have changed the outcome of the case. 3 Ohio App.3d at 198. Here, there was more than Trooper Kingsinger's perception of the odor of alcohol so this case is clearly distinguishable from *Taylor*. Likewise, this case is distinguishable from *State v. Dixon* and *State v. Reed*, because Burwell, unlike the defendants in those cases, was initially stopped when he drifted over the white edge (fog) line, which, as a moving violation, is indicia of impaired driving ability. (Dec. 1, 2000), 2nd Dist. No. 2000-CA-30

(suspected tinted window violation); 7th Dist. No. 05 BE 31, 2006-Ohio-7075, ¶2 (suspected tinted window and faulty exhaust violations). The Court in *State v. Spillers* found that weaving within one's lane, the "slight" odor of alcohol, and the admission of consuming a couple beers was insufficient to justify the administration of field sobriety tests. (Mar. 24, 2000), 2nd Dist. No. 1504. Burwell, however, was more than weaving within his own lane; rather, he drove over the marked lanes. Furthermore, Trooper Kingsinger noted that the odor of alcohol was "stronger" when Burwell left his vehicle. Accordingly, this case is also distinguishable from *Spillers*. Aside from that, as the Court in *State v. Downing* noted, "the additional element of erratic driving or specifically a "strong" odor of alcohol seem[s] to tip the scales in favor of allowing the tests." 2nd Dist. No. 2001-CA-78, 2002-Ohio-1302. Here there was evidence of erratic driving—crossing over the white edge (fog) line—and a "stronger" odor of alcohol. Therefore, we find this case distinguishable from those Burwell cites.

{¶25} For all the foregoing reasons, we overrule Burwell's second assignment of error.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs in Judgment Only.**
**SHAW, J., concurs.**