[Cite as *State v. Gibson*, 2015-Ohio-3812.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-15-22

    v.

ALMON D. GIBSON,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR20140143

**Judgment Affirmed**

Date of Decision:    September 21, 2015

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Jana E. Emerick* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Almon Gibson, appeals the judgement of the Court of Common Pleas of Allen County convicting him of 27 counts of forgery and sentencing him to one year in prison. On appeal, Gibson argues that the trial court erred in denying his motion to suppress evidence seized during a warrantless search of his vehicle. For the reasons set forth herein, we affirm the judgment of the trial court.

{¶2} On October 17, 2014, an Allen County Grand Jury indicted Gibson on 27 counts of forgery, in violation of R.C. 2913.31(A)(2) and (C)(1)(b), each being a felony of the fifth degree. Gibson entered a plea of not guilty.

{¶3} On November 5, 2014, Gibson moved to suppress the evidence underlying the indictment: 27 allegedly forged credit cards. On November 12, 2014, a hearing was held, and the following evidence was presented.

{¶4} Sergeant Dean Laubacher of the Ohio State Highway Patrol testified that he has been a trooper for the past 25 years. He explained that he has received additional, specialized training in the area of drug interdiction, including training on certain indicators suggestive of drug activity. According to Sergeant Laubacher, these indicators include: whether a motorist is in route from a source city; whether a motorist is in route to a user city; whether a motorist is traveling on a major highway; whether the vehicle has a strong odor of air freshener; and

whether a motorist is driving a rental car without proper authorization. Sergeant Laubacher further explained that narcotics generally flow from Mexico to select distribution centers in the United States, including Detroit, Michigan. From there, the narcotics are broken down into smaller shipments and transported to various user cities. During transportation, Sergeant Laubacher testified that couriers frequently drive rented vehicles and do not list themselves as an authorized driver in attempt to circumvent forfeiture laws.

{¶5} Sergeant Laubacher testified that on September 14, 2014, he was on routine patrol along Interstate 75, in Allen County, when he clocked a motorist traveling approximately seven miles above the posted limit. Sergeant Laubacher initiated a routine traffic stop.[1] He asked the driver, later identified as Gibson, for his driver's license and vehicle registration. Gibson provided Sergeant Laubacher with a Michigan temporary driver's license and the vehicle's rental agreement.

{¶6} Sergeant Laubacher testified that he examined Gibson's temporary driver's license and noticed that it had been issued in February 2014, roughly six months earlier. According to Sergeant Laubacher, Gibson stated that he was waiting on the State of Michigan to issue him a permanent license. Sergeant Laubacher added that he found it odd that Gibson was still waiting on a permanent license after more than six months. Gibson then indicated that he had a more

---

[1] The traffic stop was fully captured on Sergeant Laubacher's cruiser camera, and the video was admitted into evidence at the suppression hearing.

recent temporary license but "couldn't find the other piece of paper so [I] just grabbed that one [I] had." Nov. 12, 2014 Hrg. p. 8. According to Sergeant Laubacher, these circumstances raised a "red flag." *Id.*

{¶7} Sergeant Laubacher testified that he also examined Gibson's rental agreement and immediately noticed that Gibson was not listed as an authorized driver. Gibson explained that his unemployed girlfriend, Lexie Whitfield, had rented the vehicle for him. When Sergeant Laubacher inquired into Ms. Whitefield's whereabouts, Gibson stated that she had just recently flown to Las Vegas, Nevada. Sergeant Laubacher testified that he found these circumstances very unusual.

{¶8} Gibson informed Sergeant Laubacher that he was currently in route from Detroit, Michigan to Charleston, South Carolina. During their exchange, Gibson stated that he had previously attended school in South Carolina. When Sergeant Laubacher inquired into the particular school, Gibson could not recall the name. Sergeant Laubacher found Gibson's lack of knowledge suspicious, noting that "if you're going to college you know where you're going." *Id.* at p. 10. Moreover, Sergeant Laubacher testified that as the traffic stop progressed, Gibson became increasingly more nervous.

{¶9} After issuing Gibson a warning, Sergeant Laubacher stated that he asked Gibson for consent to search the vehicle. Gibson declined. Sergeant

Laubacher told Gibson that he would be calling for a narcotics-detection canine to come and sniff around the vehicle's exterior. Twenty-four minutes later, a narcotics-detection canine arrived. In the interim, Sergeant Laubacher detained Gibson in the front passenger seat of his cruiser. After sniffing the vehicle's exterior, the canine alerted. Based on this alert, Gibson's vehicle was searched, and 27 credit cards were uncovered.

{¶10} On December 11, 2014, the trial court denied Gibson's motion to suppress. In doing so, the trial court found that "[t]he detention of defendant was legally extended beyond the time frame necessary for [Sergeant] Laubacher to issue a warning for speeding because [Sergeant] Laubacher testified about the specific and articulable facts that demonstrated his reasonable suspicion of criminal activity." (Docket No. 23, p. 6). Specifically, the court noted that "[Sergeant] Laubacher testified about his experience and training about drug couriers driving down I-75, in rented vehicles, from Detroit, acting very nervous." *Id.* "He also observed the extreme nervousness and considered the 'indicators' about which he testified." *Id.* at 12.

{¶11} On April 23, 2015, Gibson filed a motion for reconsideration in light of the United States Supreme Court's finding that a traffic stop may not be extended in order to conduct a dog sniff, absent reasonable suspicion. *Rodriguez v. United States*, _U.S._, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). By entry

dated April 24, 2015, the trial court denied Gibson's motion noting that "[t]he dog sniff. . . was independently supported by [Sergeant] Laubacher's individualized suspicion of criminal drug activity." (Docket No. 40, p. 4).

**{¶12}** On March 5, 2015, Gibson pleaded no contest to the indictment, and the trial court entered a finding of guilt. On April 27, 2015, the trial court sentenced Gibson to a total of one year in prison, with an additional three years of post-release control.

**{¶13}** It is from this judgment that Gibson appeals, presenting the following assignment of error for our review.

*Assignment of Error*

**THE TRIAL COURT ERRED BY NOT SUPPRESSING THE FRUITS OF A WARRANTLESS SEARCH OF MR. GIBSON'S VEHICLE, THEREBY DENYING TO MR. GIBSON HIS RIGHTS TO FREEDOM FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED TO HIM BY BOTH THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION WHEN THE SEARCH WAS ENABLED BY A BASELESS DETENTION FOR 24 MINUTES.**

**{¶14}** In his sole assignment of error, Gibson argues that Sergeant Laubacher lacked reasonable suspicion to detain Gibson beyond the time period necessary to issue Gibson a warning for speeding. Gibson further argues that even if there was reasonable suspicion to detain Gibson beyond this time period, Sergeant Laubacher did not conduct a diligent investigation prior to the narcotics-

detection canine's arrival, thereby making the 24 minute detention unreasonable. We disagree.

**{¶15}** "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

**{¶16}** In the case sub judice, there is no dispute that the initial traffic stop was appropriate. Sergeant Laubacher clocked Gibson on three occasions traveling nearly 77 mph in an area with a posted maximum speed of 70 mph. Based on this information, Sergeant Laubacher had a reasonable and articulable suspicion, as well as probable cause, to believe that a traffic violation had occurred. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 24; *State v. Burwell*, 3d Dist. Putnam No. 12-09-06, 2010-Ohio-1087, ¶ 12. Thus, Sergeant Laubacher was permitted to stop Gibson's vehicle "for a time period necessary to issue a ticket or

a warning." *State v. Smith*, 117 Ohio App.3d 278, 285 (1st Dist.1996), citing *State v. Keathley*, 55 Ohio App.3d 130, 131 (2d Dist.1998). This period includes the time needed to run a computer check on the driver's license, registration, and vehicle plates. *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

{¶17} The issue in this case is whether Sergeant Laubacher had the requisite justification to detain Gibson beyond the time necessary to conduct a traffic stop so that a narcotics-detection canine could arrive on scene and sniff around the exterior of Gibson's vehicle. It is well settled that the use of a trained narcotics-detection dog during a lawful traffic stop generally does not trigger Fourth Amendment protection. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). A narcotics-detection dog may sniff around the exterior of a motorist's vehicle during a lawful traffic stop in absence of a reasonable suspicion of drug-related activity. *Id.* However, a traffic stop may not be extended—i.e., prolonged by any additional amount of time—in order to conduct a dog sniff, absent reasonable suspicion. *Rodriguez* at 1612.

{¶18} Reasonable suspicion exists when there are " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.' " *State v. Stephenson*, 3d Dist. Union No. 14–04–08, 2004–Ohio–5102, ¶ 16, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

Law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "A 'series of acts, each of them perhaps innocent,' may nonetheless, when viewed together, give the police officer justification for conducting further investigation." *State v. Ramey*, 129 Ohio App.3d 409, 414 (1st Dist.1998), citing *United States v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "[T]he relevant inquiry is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts. *Sokolow* at 9, citing *Illinois v. Gates*, 462 U.S. 213, 243-244, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶19} Here, Sergeant Laubacher testified to specific indicators suggestive of drug-related activity. Those indicators included: whether the motorist is in route from a source city; whether the motorist is in route to a user city; whether the motorist is traveling on a major highway; whether the vehicle has a strong odor of air freshener; and whether the motorist is driving a rental vehicle without proper authorization.

{¶20} During Gibson's traffic stop, Sergeant Laubacher identified several of those indicators. In particular, Gibson was not listed as an authorized driver on the vehicle's rental agreement and he was traveling southbound on Interstate-75 from Detroit, Michigan, a known distribution center, to Charleston, South Carolina, a known user city. While Gibson argues that these indicators are innocuous and therefore cannot contribute to a finding of reasonable suspicion, we again emphasize that "the relevant inquiry is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *Sokolow* at 9, citing *Gates* at 243-244. At the suppression hearing, Sergeant Laubacher explained the heavy flow of narcotics along Interstate-75, and in particular, the narcotic movement from Detroit, Michigan to southern cities. Sergeant Laubacher also explained that couriers commonly drive rented vehicles, without being listed as an authorized driver, in attempt to evade forfeiture laws. While these indicators appear innocuous to a layperson, to a law enforcement officer with experience and training regarding the patterns associated with the distribution of narcotics, these indicators raised a suspicion of drug-related activity.

{¶21} In addition to these specific indicators, Gibson's own statements and behaviors contributed to the development of reasonable suspicion. During the colloquy between Sergeant Laubacher and Gibson, Gibson was unable to provide

consistent answers to several of Sergeant Laubacher's questions. For example, Gibson stated that he had previously attended school in South Carolina, but was unable to identify the institution's name; Gibson stated that he had recently lost his license, but then stated that he had more than one temporary driver's license dating back approximately six months; Gibson stated that his girlfriend rented the vehicle, but was initially unable to identify what she did for a living. All the while, Gibson appeared to be growing increasingly more nervous.

{¶22} The determination of reasonable suspicion requires consideration of the "totality of the circumstances—the whole picture." *Sokolow* at 8, citing *Cortez* at 417. The trial court found that Gibson's statements and behaviors, in conjunction with the presence of indicators suggestive of drug-related activity, provided Sergeant Laubacher with sufficient reasonable suspicion to believe that Gibson was engaged in drug-related activity. In doing so, the trial court considered Sergeant Laubacher's experience and training regarding the patterns associated with the distribution of narcotics.

{¶23} Based on the evidence before us, we cannot say that the trial court erred in finding that Sergeant Laubacher had the requisite justification to detain Gibson beyond the time period necessary to issue a warning for speeding.

{¶24} Alternatively, Gibson argues that Sergeant Laubacher failed to diligently pursue available means of investigation likely to confirm or dispel his

suspicions of drug-related activity during the 24 minutes preceding the arrival of the narcotic-detection canine. In assessing whether a detention is too long in duration to be justified as an investigative stop, the United States Supreme Court has held that a court should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In doing so, we have found the length of a justified traffic stop to be unreasonable where, prior to a narcotic-detection canine's arrival, an officer failed to search defendant's vehicle after obtaining permission to do so, but rather detained defendant in the police cruiser and continued to question him as to whether his vehicle contained drugs. *State v. Troutman*, 3d. Dist. Marion No. 9-11-17, 2012-Ohio-407, ¶ 40-44.

{¶25} Unlike the facts presented in *Troutman*, Sergeant Laubacher was denied consent to search Gibson's vehicle. Prior to the narcotic-detection canine's arrival, the only means of investigation available to Sergeant Laubacher was to run computer checks on Gibson's information. In reviewing the footage of the traffic stop, it is clear that Sergeant Laubacher pursued this course of action, as evident by the fact that he questioned Gibson regarding an undisclosed prior arrest in

Alabama. Despite Gibson's argument to the contrary, we cannot say that the conduct condemned in *Troutman* is present here.

{**¶26**} Accordingly, Gibson's sole assignment of error is overruled.

{**¶27**} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**